[Civ. No. 2200. Fourth Appellate District.—February 9, 1939.]

JOHN W. AUSTIN et al., Petitioners, v. L. N. TURREN-TINE, as Judge of the Superior Court, etc., Respondent.

Charles C. Crouch and George W. Crouch for Petitioners.

Stearns, Luce, Forward & Swing and Fred Kunzel for Respondent.

GRIFFIN, J.—Petitioner represents that there was and is pending an action in the Superior Court of Kern County entitled *John W. Austin, Helen P. Austin and Luethel Austin, Plaintiffs,* v. *Hallmark Oil Company, a Corporation, et al., Defendants,* in which action petitioners herein were the plaintiffs and the Hallmark Oil Company, a corporation, Frank D. Carroll, J. D. Bryan, Charles H. Forward, James D. Forward, Reuben E. Harrison, Lucille J. Porter and others were defendants.

The complaint in that action is very voluminous, but the salient allegations and those only pertinent to this application, may be thus stated: Plaintiff and petitioner John W. Austin asked that it be decreed that he was the owner of a 20 per cent interest in a certain oil lease covering some 30 acres of oil-producing land in the county of Kern; that he be adjudged to have been such owner ever since September 24, 1934, and that at all times since he has been entitled to such 20 per cent interest in the production and profits therefrom. Plaintiffs also asked that petitioners be declared to be the legal and equitable owners of certain shares of stock of the defendant Hallmark Oil Company; that said stock be ordered issued and delivered to plaintiffs; and that there be an accounting, both with relation to said stock ownership and with relation to said 20 per cent leasehold interest.

The complaint alleges that petitioner John W. Austin and John K. Porter, now deceased, had entered into an agreement to procure the said oil lease and to share equally in the benefits thereof; that the lease was thereafter procured and taken in the name of the said John K. Porter, who thereupon assigned a one-half interest therein to said Austin; that said petitioner had consulted the defendant Reuben E. Harrison with reference to investing the moneys required for drilling an oil well on the property; that Harrison refused so to do, but declared he would purchase stock in a corporation to be formed for the purpose of raising the money to conduct drilling operations, provided the defendant Charles H. Forward, his personal attorney, be given entire charge of all legal matters in connection with the formation of said corporation and the management of its affairs; that in so doing said Charles H. Forward would undertake to act as attorney on behalf of petitioner John W. Austin, the said John K. Porter, Charles H. Forward, and the said Reuben E. Harrison; that the defendant Charles H. Forward accepted said employment and continued to bear such relationship during all of the times set out in the complaint. It is alleged that the aforesaid attorney then fraudulently organized a corporation under the laws of the state of Nevada, known as Hallmark Oil Company, Inc., over which he and his associates exercised all practical control; that upon the formation of said corporation the said John K. Porter, acting for himself and plaintiff John W. Austin, entered into an agreement with said Hallmark Oil Company, Inc., for the advancement of moneys necessary for the developing of the property; that this agreement contemplated that Porter and Austin should devote their time to drilling operations and that the corporation should, in consideration thereof, receive 50 per cent of their leasehold interests; that thereupon the lease was assigned and transferred to the said corporation; that drilling operations were begun and continued until about January 18, 1935, when the company ran short of money and then had outstanding a considerable amount of unpaid bills and no credit by which it could obtain further funds. Additional funds were raised and a reorganization effected under certain conditions, one of which was that the plaintiff, Austin, was to act as trustee in the expenditure of the money thus raised. Plaintiffs, the petitioners, further alleged that the

defendant, Charles H. Forward, with fraudulent intent, secretly directed the resident officers of the Hallmark Oil Company, Inc., of Nevada, to resign and to appoint in their place Charles H. Forward, the defendant James D. Forward, and the defendant Frank D. Carroll, the same to constitute the new board of directors; that the principal office of the corporation in California had theretofore been at Bakersfield, California; that Charles H. Forward and his associate directors changed the principal place of business to his (Forward's) law office in San Diego; that plaintiff Austin had theretofore been the resident agent in California; that he was thereupon removed and the said Charles H. Forward appointed resident agent; that thereafter, on November 4, 1935, the defendants Charles H. Forward, James D. Forward and Reuben E. Harrison formed a corporation under the laws of California without assets or liabilities known as Hallmark Oil Company, to take over the property and assets of said Hallmark Oil Company, Inc., and to issue stock in the new corporation in the same proportionate amounts as had theretofore been issued to the stockholders of said Hallmark Oil Company, Inc.

It is further alleged that plaintiffs had theretofore advanced various sums for purchase of stock in said Hallmark Oil Company, Inc.; that said stock was duly issued to them on the orders of the said former board of directors of said company and placed in the hands of the defendant James D. Forward for delivery to plaintiffs; that instead of so delivering their stock to them he fraudulently gave it to the defendant Charles H. Forward, who has ever since retained it and both he and the Hallmark Oil Company refused to deliver any stock of either of said corporations to plaintiffs.

It is further claimed that besides this, there was certain stock erroneously issued to defendant R. E. Harrison. It is further alleged that on January 30, 1936, the defendants Charles H. Forward, Reuben E. Harrison and James D. Forward, acting for said California corporation, applied to the commissioner of corporations of this state for permission to issue stock of the said company to those persons who were theretofore stockholders of the Nevada corporation; that in so doing they omitted all reference to the stock that had been issued to these plaintiffs and sought and received a permit

to issue stock, omitting therefrom all reference to these plaintiffs; that said permit authorized the taking over of the property and assets of the Nevada corporation; that ever since about March 5, 1935, the oil lease has been very productive and highly profitable; that Hallmark Oil Company and other defendants have been in complete control and possession and have received all of the moneys and things of value therefrom; that they have never, either by way of stock dividends or proportionate amounts of profits, or in any way whatsoever, given to plaintiffs any of the income, but have appropriated it all to themselves and refused also to account to plaintiffs for any of the income; that the total value of the leasehold is in a sum not less than $1,500,000.

Plaintiffs sought the imposition, by decree, of a trust in their favor on the leasehold property, the issuance to them of the stock to which they are entitled, an accounting, a declaration of their rights, the appointment of a receiver, and general and specific equitable relief.

A copy of the complaint is attached to the original of this petition.

The defendants Charles H. Forward, Hallmark Oil Company, and other defendants filed their answer which denied most of the allegations of plaintiffs' complaint and alleged that on September 24, 1934, Charles H. Forward entered into an agreement with John W. Austin and Reuben E. Harrison, as coadventurers to procure the oil lease described in the complaint and to thereafter cause the property to be drilled for oil and that the interest of each of the parties in the venture was to be determined by the amount that they subscribed; that they thereupon caused the Hallmark Oil Company, Inc., to enter into an agreement with John K. Porter to drill for oil on the property; that thereafter, on November 2, 1934, John W. Austin, without paying any consideration therefor, caused said John K. Porter to assign to him one-half of the interest reserved to him under the terms of said agreement; that he accepted said assignment with the intent of procuring for himself a secret profit and thereby defrauding his other joint adventurers. A copy of their answer is attached to the original of this petition.

At the same time, the defendants filed their cross-complaint, setting forth the same matters, alleging that plaintiff John W. Austin obtained a secret profit from a joint adventure,

and separately sought money judgments against the plaintiff Austin.

This was the situation existing at the time of the taking of the deposition of the defendant Charles H. Forward, which is the subject of this petition for a writ of mandate.

Subsequently, plaintiffs' demurrers to all of the cross-complaints have been sustained without leave to amend. On May 5, 1938, plaintiffs caused to be filed and served an affidavit for the taking of the deposition of the defendant Charles H. Forward before the respondent, the Honorable L. N. Turrentine, one of the judges of the Superior Court of San Diego County, and also filed an affidavit for the issuance of a *subpoena duces tecum* for the production by him of books and records of the Hallmark Oil Company and the Hallmark Oil Company, Inc. A copy of these documents is attached to the original petition herein. A subpoena and *subpoena duces tecum* were issued and accordingly, on May 16th, the taking of the deposition commenced.

During the taking of the deposition the court had before it all of the pleadings in the case, including the affidavit for issuance of the *subpoena duces tecum*, which sets out minutely and in much detail the materiality of the production of the books and papers therein specified. The witness Charles H. Forward testified that he was president of the Hallmark Oil Company and one of its directors; that he was also the president of the Hallmark Oil Company, Inc., at the time of its dissolution. Thereupon, petitioner called upon him to produce the stock book of the Hallmark Oil Company, Inc., in response to the subpoena. The record shows that this book was in the court room. The witness refused to produce it and the court denied petitioners' request that he order the witness to produce it. The record also shows that the minute book of said corporation was in court at the time of the taking of the said deposition but the attorneys for the defendant Charles H. Forward refused to permit any portion of it to be examined or introduced in evidence except such portions as they declared bore upon the subject of plaintiffs' stock issuance. The witness produced copies of certain minutes of the Hallmark Oil Company, Inc., which he declared were the only minutes dealing with the affairs of the plaintiffs. The witness then produced certain stock certificates showing certain shares of stock to be

issued to the plaintiffs and refused to permit any examination of the book or further evidence of its contents. In this, the court upheld him, denying petitioners' request to be allowed to examine the record or to introduce it in evidence. The reasons given by the court for denying petitioners' request will be referred to later.

Petitioners then called upon the witness to produce the stock certificate book of the Hallmark Oil Company. The witness refused with the excuse that the stock certificates that were material had already been produced, and the court upheld him in that refusal.

There was then introduced in evidence the minutes of the Hallmark Oil Company, Inc., of March 31, 1935, directing the issuance of stock to the plaintiffs and the delivery of the stock to James D. Forward for delivery to them. It was then shown that the said stock was immediately issued and so delivered to James D. Forward; that the defendant James D. Forward received it and placed it in the possession of the defendant Charles H. Forward, who never delivered it; that it was held in his office until February 4, 1936, at which time he had the new board of directors pass a resolution ordering the said stock canceled. A notation of such action was made across the face of the certificates, and in that way they are now held in the office of the new corporation, the Hallmark Oil Company, of California.

The witness testified that after the issuance of the stock in the new California corporation, all of the assets of the Hallmark Oil Company, Inc., were transferred to it and the Nevada corporation was dissolved. The witness was asked if he knew the approximate amount of monthly production from the property during any of the time. The court refused to permit the question to be answered because he considered it a matter touching on the accounting phase of the action and had nothing to do with the primary rights of the parties. The witness, in justifying his refusal to deliver the plaintiffs their stock and the passage by the board of directors of the corporation of the resolution canceling it, asserted that Austin had never put any money into the company.

It was then shown that an application had been made to the corporation commissioner showing additional advances for which certain of the defendants sought to have stock issued to them amounting to $28,000. Petitioners asked that he

produce the books of account to show the amounts and data concerning it. This was refused. A check for $1,000 given by John W. Austin and deposited in the company account was produced. The witness testified that this check represented money contributed by others than Austin and he assumed that stock was accordingly issued to the real contributors. The court refused to compel the books of account to be produced. The court then ruled that he would give no instructions in regard to producing the books, solely because he considered he did not have any power to make a valid order. That is, the court ruled that no books or records of account showing receipts and disbursements of the defendant Hallmark Oil Company or the Hallmark Oil Company, Inc., should be produced in the deposition under any circumstances, and petitioners must await the question until the trial of the issues of the case to determine whether or not a right to an accounting existed.

It was admitted by the defendants that all of the stock of the new corporation was distributed directly to the stockholders of the old corporation, share for share, except as to the petitioner John W. Austin.

One of the allegations of the complaint was that the plaintiff John W. Austin had made advancements of money to the Hallmark Oil Company, Inc., for which he was entitled to have issued to him, and which was issued to him, stock of said corporation.

On the taking of the deposition it was conceded by the witness that a certain check of said plaintiff in the amount of $1,000 had been received by the corporation. The witness testified, however, that this $1,000 represented moneys advanced by the witness and his associates. Counsel for petitioners thereupon requested the respondent to instruct the witness to produce said books and records for the purpose of showing thereby that the $1,000 was not money that had theretofore been advanced by the witness and his associates but represented new money of the plaintiff John W. Austin. This request was denied. The witness had been subpoenaed to produce a certain instrument wherein one M. P. McGuire assigned and transferred to the Hallmark Oil Company for one of the other defendants, all his right, title and interest in and to the leasehold described in the complaint. The witness refused to produce the document and the respond-

ent denied petitioners' request for an order directing him to do so. The deposition of the witness in relation to other phases of the case, consisting of 325 pages, was left with this court for examination. The taking of the deposition is still pending before respondent, as the same has not as yet been signed by the witness.

The point to be decided is whether the court was justified in his refusal to have certain of the books and records of the Hallmark Oil Company and the Hallmark Oil Company, Inc., produced, and the evidence therefrom relating to the subject of the complaint and answers encompassed within the deposition. The court based its refusal on the ground that it did not have jurisdiction so to do.

Petitioners contend (1) that the evidence sought to be made a part of the deposition was material and competent evidence in petitioners' behalf upon a trial of their pending case; (2) that the evidence and the witness being beyond the reach of a subpoena of the Kern County court, could only become available to them through the deposition proceeding; (3) that the refusal of respondent to order the witness to produce the evidence would make it impossible for the petitioners, upon the trial of the action, to prove many of the material allegations of their complaint.

Respondent demurs to the petition for writ of mandate on the following grounds: (1.) that the petition does not state facts sufficient to warrant the granting of the writ of mandate; (2) that the petition is uncertain in that it cannot be ascertained therefrom how or in what manner the books and documents of which petitioners seek to compel the production are material to the proof of petitioners' cause of action.

In the answer, respondent admits that he refused to instruct the witness to produce the stock certificate book of the Hallmark Oil Company, Inc., and alleges in justification thereof, that all the stock certificates that were shown to be material were produced; that there was no showing by petitioners that the balance of the stock certificate book was in any way material or necessary to the proof of petitioners' cause of action. A similar refusal and justification was made by respondent as to each of the above-mentioned demands.

*Mandamus* is the proper remedy to compel a court to assume or exercise jurisdiction in such a proceeding where it has jurisdiction and has refused to proceed on the ground

of lack of jurisdiction. (*Harrison* v. *Superior Court,* 3 Cal. App. (2d) 469 [39 Pac. (2d) 825]; *Christ* v. *Superior Court,* 211 Cal. 593 [296 Pac. 612].)

Respondent contends that petitioners were seeking, in the taking of the deposition, to discover how much money plaintiffs were entitled to prior to a *prima facie* showing that they were entitled to anything, and therefore they were not allowed to examine the books of the company prior to establishing that they were entitled to an accounting, and cites as a logical precedent for such action the case of *Terry* v. *Stull,* 19 Del. 412 [169 Atl. 739]. This action was for an accounting. Plaintiffs had filed certain written interrogatories to which the defendants filed exceptions. The trial court sustained defendants' exceptions and held that the defendants did not have to answer the interrogatories on the ground that the plaintiffs were not entitled to an accounting prior to establishing their right to an accounting, and stated as follows:

"The proper procedure in such cases is for the complainant to first establish his right to an accounting. If he succeeds in carrying that burden, an interlocutory decree is then in order declaring the right to an accounting to be established and ordering the manner of its taking. The final decree settles the account. This being the procedure, there is no duty on the defendant to make discovery of matters entering into the account prior to the interlocutory decree which adjudges a duty on the part of the defendant to account. . . . (Citing cases.) It may be true that where an account is pertinent for the purpose of establishing the complainant's title to an account, as where an account in a present business is evidentiary of its identity with another business concerning which the bill is filed and as to which the duty to account is not denied, discovery will be required of an account of the present business in advance of an interlocutory decree establishing that that business is one in which the complainant has the right to call upon the defendant to account. . . . When the defendant answers as he has here that he did acquire property from his father, describing its nature and amount, but emphatically denying every suggestion of wrongful acquisition alleged by the bill, I think it is not permissible for the complainant to exact accounting details with respect to that property until he has first established that its acquisi-

tion was under such circumstances as raise a constructive trust in his favor.''

Respondent further cites the case of *O'Brien* v. *Mackey*, 36 Fed. (2d) 89, in support of this holding.

In the case of *Ex parte Robert S. Clarke*, 126 Cal. 235 [58 Pac. 546, 77 Am. St. Rep. 176, 46 L. R. A. 835], it was held that the people of the state have a constitutional right to be secure in their persons, houses, papers, and effects, against unreasonable seizures and searches, and it is not to be tolerated that a person should be compelled to deliver his private books and papers to another who does not claim any ownership in them, except when warranted by a law clearly not inconsistent with the constitutional provision. It was also held that the court is bound to protect a party to an action from undue inquisition into his private affairs, and cannot allow a drag-net of inspection to be drawn through all of his books and papers to discover whether they do or do not contain legal evidence in favor of the opposite party. ■ Nor will a mere suspicion that they contain material evidence warrant an order for their production. The court has no power to order the production of books or papers by one party to be used as evidence for the other party without an affirmative and substantial showing by affidavit or otherwise that they contain evidence material to the cause of action or defense of the party requiring them.

■ In the late case of *Union Trust Co.* v. *Superior Court*, 11 Cal. (2d) 449 [81 Pac. (2d) 150, 118 A. L. R. 259], the above holding receives support. However, there appears to be an exception to this general rule, namely, that in such a proceeding, where it appears that the parties to the action in question stood in the relation of trustor and trustee, respectively, one to the other, the ordinary strictness of the rule relating to the right of inspection is greatly relaxed, and under such circumstances, almost as a matter of course, the trustor or the beneficiary has a right to a full and complete inspection of all books and records with relation to the trust, both parties having a common interest therein. This rule was recognized even in *Ex parte Clarke, supra,* at p. 241, wherein it is said:

''Originally, an order for the production of a paper, document, or book was made only when the document was one declared on in the bill or set up as a defense; or where

the party asking for it had an interest in the document itself—as where it was a contract between the parties, and there was only one copy of it which was in the hands of the opposite party; or where the instrument was, in the very nature of things, material evidence, as where it was alleged to have been forged or altered, and that it would on its face show the fact alleged; or where books belonged to both parties and would necessarily contain evidence of the issues pending—as in case of a suit between partners, or generally between principal and agent or trustee and beneficiary.''

■ That a corporation is the agent and trustee of its stockholders in their behalf and for their use and benefit, holding, controlling and managing the corporate property and business is well settled. The directors are the trustees for the stockholders and also for the corporation. (*Hobbs* v. *Tom Reed Gold Min. Co.*, 164 Cal. 497 [129 Pac. 781, 43 L. R. A. (N. S.) 1112]; *Wright* v. *Oroville M. Co.*, 40 Cal. 20, 27; *Rossi* v. *Caire*, 174 Cal. 74, at 81 [161 Pac. 1161]; *Havemeyer* v. *Superior Court*, 84 Cal. 327, 362 [24 Pac. 121, 18 Am. St. Rep. 192, 10 L. R. A. 627].)

The right of stockholders in a corporation to inspect the books, records and journals of the corporation is equally well settled. (*Johnson* v. *Langdon*, 135 Cal. 624 [67 Pac. 1050, 87 Am. St. Rep. 156]; Civ. Code, sec. 355.)

■ The enactment of statutes relative to the remedy of obtaining evidence by inspection was had with a view of providing a more speedy and less expensive remedy than by the proceedings in chancery, and, being remedial in their nature, they should be liberally construed. The trend of judicial decisions is to relax the rules which relate to the taking of evidence by ancillary proceedings, of which the inspection of documents is one method, to the end that the trial of actions may be expedited and justice be more efficaciously and speedily administered.

In the case of *Alabama Girls' Industrial School* v. *Reynolds*, 143 Ala. 579 [42 So. 114, at p. 115], the court said:

''But, when both parties have an equal right to the examination and inspection of documents and books of account, as in cases of partners, and books kept by a trustee of the trust account, and of documents acquired in a trust relation, which have to do with a pending suit between such parties, the rule is different, and the court will on application of either party

order their production for inspection at any stage of the suit to enable him to prepare his case. . . . So a trustee is bound to render every necessary information required of him, and when he is called to account he will be compelled to produce all the books, papers, writings, vouchers, and other documents which are in any way connected with the trust, and which are in his possession or under his power.'' (Citing cases.)

Under the holding in this case, the determinative question, as we see it, is this: From the pleadings, the affidavits and the testimony adduced, is there a sufficient showing that the parties to the action in question stood in a trust relationship one to the other, together with sufficient allegations of fraud of the trustee and did the trustee admit sufficient allegations that indicated that a trust relationship was created?

▉ If it may be reasonably determined from the pleadings, the affidavits and proofs submitted that a trust relationship is created and there has been a breach of that trust relationship, a right to an accounting exists. In the light of the decisions cited, petitioners are entitled, under the supervision of the respondent court, to have produced for the inspection of the court such books, papers, records, journals and entries as, in the light of the pleadings and issues, may be material and pertinent, and such records should not be sealed against judicial inquiry.

▉ If such right exists as to the examination of the books of the first corporation formed in the instant case then that same right, under the circumstances here disclosed, exists as to the second corporation. (*Schaake* v. *Eagle etc. Can Co.*, 135 Cal. 472 [63 Pac. 1025, 67 Pac. 759].)

Let us tersely review the pleadings, affidavit and proof, to determine whether it appears that the parties to the action in question stood in a trust relationship. One of the defenses of the Hallmark Oil Company, as well as of all other active defendants, was that the plaintiff John W. Austin, had entered into a joint adventure with the defendants Charles H. Forward and Reuben E. Harrison, to procure the lease, and caused the Hallmark Oil Company, Inc., to enter into the drilling agreement with John K. Porter, the holder of the lease.

It is claimed by certain defendants in the superior court action that certain other persons were by agreement admitted

into the joint adventure arrangement but that John W. Austin, with the intention of defrauding his associates, caused John K. Porter to assign to him, without consideration, a portion of his rights under the leasehold; that he did so with the intention of securing for himself a secret profit; that when he entered into the joint adventure Austin had especially assured his associates that there were no secret profits or commissions in which he was to participate. ■ It is settled law of this state that where a joint adventure is alleged, and it is claimed that one of the joint adventurers received a secret profit, then relief can only be had by way of an accounting. (*Mosher* v. *Helfend*, 7 Cal. App. (2d) 48, 51 [44 Pac. (2d) 1050].) ■ The defendant Hallmark Oil Company concedes that it has and holds, and for a long time has had and held the leasehold property and all the fruits of it. The pleadings admit that all of the original parties were to contribute approximately an equal amount of money to procure a lease on the property in Kern County and drill for oil; that the Hallmark Oil Company, Inc., was formed and stock issued in the names of the parties, including John W. Austin, in proportion to the amount of money allegedly advanced; that the stock certificates were delivered to James D. Forward, for delivery to the respective parties. The only contention in regard to the delivery arises over the issue as to whether Austin failed to advance his portion of the money. It was admitted that a check for $1,000 was given by John W. Austin and deposited in the company accounts. The undenied affidavit for issuance of the *subpoena duces tecum* in support of the materiality of the proffered evidence is more than ordinarily replete with respect to a statement of facts. We believe from the undisputed facts, the pleadings and proof, that it may be fairly inferred that a trust relationship is involved and that the books and documents contain evidence material to plaintiffs' cause of action.

The case of *Crocker* v. *Conrey*, 140 Cal. 213 [73 Pac. 1006, 1007], was an original proceeding by *mandamus* to compel the respondent judge to complete the taking of a deposition which was taken before him. In that case the court said:

"He is not, like the notary in such case, a mere ministerial functionary, endowed with no power except to write down what a witness consents to say; he is the judge of the court in which the cause is awaiting trial, and he is engaged in

the performance of the legitimate judicial duty of securing to a party the means of producing at the trial the evidence necessary to sustain his action or defense.''

*Dowagaic Mfg. Co.* v. *Lochren,* 143 Fed. 211 [6 Ann. Cas. 573], was a case wherein a petition for a writ of *mandamus* was sought to direct the judge of the circuit court to issue a *subpoena duces tecum* and to direct certain witnesses to testify in an accounting before a master. It was there held that it was not the duty of the auxiliary court or judge within whose jurisdiction testimony is being taken in a suit pending in the court of another district to consider or determine the competency, materiality or relevancy of the evidence which one of the parties seeks to elicit; that it is the duty of such a court or judge to compel the production of the evidence, although the judge deems it incompetent or immaterial, unless the witness or the evidence is privileged, or it clearly and affirmatively appears that the evidence cannot possibly be competent, material or relevant and that it would be an abuse of the process of the court to compel its production. (Citing cases.)

Also, in *In re Randall,* 90 App. Div. 192, 197 [85 N. Y. Supp. 1089], a commission had been issued out of the court in the state of Ohio, in which the action was pending, to take the testimony of the secretary and treasurer of a corporation in the state of New York. The officer appeared in response to a *subpoena duces tecum* but refused to answer many questions upon the ground that the evidence sought was incompetent and immaterial. The court there said:

''We are not, however, called upon to pass upon the competency of the evidence sought to be elicited from the witness, or its admissibility upon the trial of the action. That will become a matter for determination by the Ohio court when the commission shall be returned to it. For present purposes, it is sufficient if it appear that such testimony may be competent; and, so far as the examination is not entirely irrelevant to the subject-matter of the action, the court will not, nor is it called upon to, pass upon the strict legality and competency of the evidence sought to be elicited.''

The demurrer to the petition is overruled. Let a peremptory writ issue as prayed for in the petition.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 11, 1939, and the following opinion then rendered thereon:

THE COURT.—In denying respondent's petition for rehearing and to clarify the additional point raised in that petition, i. e., that this court erroneously assumed that the books of account of the Hallmark Oil Company, Inc., were in the possession of the defendant Charles H. Forward, we should add that from an examination of the testimony it is not altogether clear whether the books of account of the Hallmark Oil Company, Inc., prior to April 1, 1935, were in the possession of the defendant witness. However, from respondent's return to the petition for a writ of mandate the only ground for refusing to instruct the witness to produce the books of that company subsequent to April 1, 1935, was predicated upon the ground that they were not material or necessary to the proof of petitioner's cause of action and that said books could only be material when and if it was established that the petitioners became entitled to an accounting. Such was the apparent basis for the refusal of the court to instruct the witness to produce them.

With this explanation the petition for rehearing is denied.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 10, 1939.