[Civ. No. 21713.   Second Dist., Div. One.   May 15, 1956.]

KAYNAR MANUFACTURING COMPANY, INC. (a Corporation), Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; EDGAR FLORADO NASON, Real Party in Interest.

548

Mitchell, Silberberg & Knupp and Arthur Groman for Petitioner.

Harold W. Kennedy, County Counsel, and William E. Lamoreaux, Deputy County Counsel, for Respondent.

A. J. O'Connor for Real Party in Interest.

NOURSE (Paul), J. pro tem.*—Petitioner seeks a writ of prohibition to prevent the respondent court from enforcing an order compelling it to produce for inspection certain of its books and records.

The pertinent facts as disclosed by the petition are:

Petitioner entered into a contract with one Nason (real party in interest here) under which Nason was employed to perform certain services for petitioner. The term of contract was four years, commencing on the 13th of January, 1955. By the terms of the contract Nason was to be paid a stated salary per month and, at the end of each year, a sum equal to one-half of 1 per cent of petitioner's annual net sales during the preceding year which were in excess of petitioner's net sales for the year 1954, or in excess of the sum of $1,000,000, whichever should be the lesser figure, upon condition that he "well, truly, and competently performs his duties and obligations" under the contract.

At the end of the ninth month of his employment Nason was discharged, and thereafter commenced the action against petitioner in which the order in question was made.

In his complaint, Nason alleged that he was discharged without just or legal cause. He sought by way of damages not only his loss of stated salary for the remainder of the term, but a sum based upon his share of the prospective net sales.

Petitioner's answer admitted the contract of employment and the discharge of Nason, but denied that he had been

---

*Assigned by Chairman of Judicial Council.

wrongfully discharged and alleged that he had been discharged because of a breach by him of the obligations of the contract on his part to be performed. It further denied all allegations of the complaint as to damages.

Thus the only issues of fact formed by the pleadings were: Was the plaintiff wrongfully discharged; and, if so, in what sum was he damaged?

In February of 1956 Nason moved the trial court for an order compelling petitioner to permit him to examine and take copies of certain accounts from petitioner's general ledger and its sales journal and "any other accounts which defendant contends should be deducted from 'gross sales' to determine the correct amount of 'net sales.' " Nason based his motion upon his complaint, and upon his affidavit which stated the relevant terms of the contract of employment including the definition of net sales as set forth in that contract, specified the accounts and records which he desired to examine, and alleged that they were material to the issue of damages.

In opposition to the motion petitioner filed an affidavit of its secretary, in which he stated that petitioner had a meritorious defense to the action in that Nason had breached his contract of employment by failing to do certain things specified in the affidavit, and had on account of this breach of duty been rightfully discharged; that petitioner was engaged in a highly competitive industry, and that the information sought by Nason was confidential and eagerly sought after by petitioner's competitors with whom Nason was connected.

The trial court granted Nason's motion and ordered petitioner to forthwith make available to a public accountant representing Nason the following books and records of the Kaylock division of petitioner corporation for the calendar years 1954 and 1955:

"From the general ledger or its equivalent:
    (a) Sales accounts;
    (b) Return and allowance accounts;
    (c) Discount on sales accounts; and

"From the sales journal or its equivalent:
    (a) Sales invoices;
    (b) Credit memoranda;
    (c) Cash received record journal;

together with any other accounts which defendant contends should be deducted from 'gross sales' to determine the correct total of 'net sales.' "

Respondent court will, unless the writ prayed for here issue, enforce its order by proceedings in contempt against the officers of petitioner.

In support of its application for a writ of prohibition, petitioner makes two points. ■ Its first point is that "The books and records ordered to be produced (which relate to damages) would become material only in the event that Petitioner were held liable to Nason." In support of this contention petitioner argues that inasmuch as Nason did not file a counteraffidavit controverting the facts stated in the affidavit of petitioner's secretary as to Nason's breach of the contract of employment, he is not entitled to discovery pursuant to the provisions of section 1000 of the Code of Civil Procedure until he has established the liability of petitioner to him for damages. This contention cannot be sustained.

In order that a party to an action may, pursuant to section 1000, Code of Civil Procedure, have the right to inspect books of account or documents, he must (1) show that the person against whom the order is sought has the writings to be inspected in his possession or under his control; (2) identify the writings desired; and (3) clearly show that they contain competent and admissible evidence which is *material to the issues to be tried.* (*Milton Kauffman, Inc.* v. *Superior Court,* 94 Cal.App.2d 8, 15 [210 P.2d 88], and cases there cited.)

Petitioner here makes no contention that it does not have and control the documents demanded, nor, with one exception to be hereafter noted, that the order does not sufficiently identify the documents which petitioner is called upon to produce; nor does it, as to certain documents, assert that they do not contain competent and admissible evidence relevant to the issue of damages as framed by the pleadings. It does contend, however, that the issue of liability must first be tried and determined in Nason's favor before it is compelled to produce this evidence, or that at least plaintiff must first make a prima facie showing of liability. It bases this claim upon certain language used in the cases of *Austin* v. *Turrentine,* 30 Cal.App.2d 750 [87 P.2d 72, 88 P.2d 178], and *Milton Kauffman, Inc.* v. *Superior Court,* 94 Cal.App.2d 8 [210 P.2d 88], that it was necessary therein that the plaintiff first make a prima facie showing that a confidential relationship existed between the parties before inspection could be compelled. In both those cases, however, plaintiff was seeking an accounting, and the language of the court was

addressed to the fact that if a confidential relationship existed then the plaintiff had a common right with the defendant in the books and records demanded; and the prima facie showing which the opinions in the two cases spoke of is the showing of that relationship, and therefore the showing of an issue to which the evidence sought would be relevant. The present action is one for damages and there is no question but that there is an issue to which the evidence sought is relevant. That is all that is required in order to entitle the plaintiff in the subject action to inspection.

To delay inspection until after the trial of the issue of liability would, in an action such as this where the plaintiff is entitled to have all issues submitted to a jury, defeat the purpose of Code of Civil Procedure, section 1000, as that section has been interpreted by our courts (see *Milton Kauffman, Inc.* v. *Superior Court, supra,* and cases cited at pp. 15 and 16 thereof.)

Petitioner's second point is that the order of the court, even if properly issued, is too broad in its scope, in that it requires petitioner to produce and permit inspection not only of its books of account but of its detailed records which are the basis for the entries in its books of account, and in that it also requires the production of documents which are not identified. We think that this contention of petitioner must be sustained.

The contract upon which Nason must rely contains the following definition of net sales: "As used herein, net sales are defined as gross sales less taxes, excise charges, discounts, credits, allowances, refunds, or returns."

Neither the complaint in the subject action nor the affidavit for the order in question tenders any issue or makes any showing as to the correctness of petitioner's books of account or that its true gross and net sales are not truly reflected in its ledger accounts; nor has any showing been made as to how the items of the order hereafter mentioned would be material evidence to show either the amount of gross sales or any of the items to be deducted therefrom under the contract in order to determine net sales. The items we refer to are "Sales invoices," "Credit memoranda," and "Cash received record journal," all of which are merely the basis for the entries in the books of account.

In this action, Nason's contract of employment having been terminated, he does not have the right to an accounting of profits as such; nor does he seek such an accounting, but

seeks only damages which would be based in part upon the actual profit earned by petitioner during the first year of the contract and the estimated profits during the future years.

Nason therefore does not have a common right with petitioner to the books in question, and does not have any right to inquire into the details of petitioner's business. The purposes of discovery and the proper administration of justice will be fully served by permitting an inspection of the ledger accounts; and to require the petitioner to produce the additional records specified in the order upon the showing here made would amount to an unreasonable search, contrary to the provisions of article I, section 19 of the Constitution of this state.

That part of the order by which petitioner is ordered to produce certain unidentified accounts described as "accounts which defendant contends should be deducted from 'gross sales' to determine the correct total of 'net sales'" certainly does not meet the requirements that the party seeking the inspection must identify the writings desired. If there are other accounts than those set forth in petitioner's ledger which contain evidence material to the issue of damages, this fact may be ascertained by the real party in interest by means of a deposition, and he may thus lay the basis for their production. Until he does so, he cannot go on a fishing expedition by demanding that petitioner produce all documents which it may deem relevant.

Let a peremptory writ of prohibition issue, enjoining the respondent court from enforcing its order for an inspection of books, made and entered on the first day of March, 1956, in action number 652139 in said court, except insofar as it orders petitioner, defendant in said action, to produce and make available to the public accountant representing the plaintiff the following books and records of petitioner for the calendar years 1954 and 1955, to wit: from petitioner's general ledger or its equivalent, "(a) Sales accounts; (b) Return and allowance accounts; (c) Discount on sales accounts."

White, P. J., and Fourt, J., concurred.