## WARD v MUTUAL TRUCKING CO

Ohio Common Pleas, Huron Co

Decided Oct 12, 1933

Young & Young, Norwalk, for plaintiff.
Rheinfrank & Lindecker, Toledo, and W. R. Pruner, Norwalk, for defendant.

## OPINION

By IRVING CARPENTER, J.

Plaintiff in his amended petition says he operated a store in a building owned by himself and wife, at the intersection of two highways; that a truck of the defendant was negligently driven off the road, struck his building causing it to collapse and injure himself and his wife and damaged his stock of goods and his building, for which, including loss of services and expenses for his wife, and loss of business, he claims damages. The answer of the defendant is a general denial of the allegations of the amended petition.

To its answer the defendant has appended eight interrogatories to be answered by the plaintiff. They are in substance as folllows:

1. Give an itemized account of the fixtures and stock and the valuation of the same.
2. Whether the building has been changed or altered in its condition since the collision.
3. If so, what? Giving details.
4. Medical bills incurred for his wife.
5. Nursing bills incurred for his wife.
6. What books of account or other records has plaintiff showing the volume of his business.
7. When did plaintiff purchase the real estate, and what considerations paid.
8. What alterations to the building made after the purchase and before the collision.

Plaintiff having failed to answer these, defendant filed a motion to dismiss the action, with a brief attached, and thereupon, with leave of court, plaintiff demurred to each of the interrogatories. The matter is now before the court for determination, first of the demurrer, and second the motion to dismiss.

The propriety of the interrogatories challenges the interest and attention of the court to an examination of the history of the statute authorizing such interrogatories and the decisions of the courts thereon. The particular statute in question is §11348 GC and is as follows:

"A party may annex to his pleading, other than a demurrer, interrogatories pertinent to the issue made in the pleadings, which interrogatories, if not demurred to, shall be plainly and fully answered under oath, by the party to whom they are propounded, or if such party is a corporation, by the president, secretary, or other officer thereof, as the party propounding requires."

Prior to the adoption of the Code of Civil Procedure in 1853 practically all matters of this character, where a party sought in-

formation from his opponent, he was required to do so by an equitable suit for discovery, even though the information obtained might be needed to prosecute or defend an action at law. With the coming of the code and shortly thereafter, it was sought to provide legal procedures by which a party might obtain such information.

Four separate devices have been provided to accomplish that many different objectives in such discovery, as follows:

1. The taking of depositions was authorized by §§338 et seq. of the original code, now §11521 et seq. GC. This has been expanded by practice to permit one party to make very searching inquiries of his opponent and opponent's witnesses regardless of where they may be domiciled.

2. The inspection of documents and records was provided for in §360, now §11550 et seq. GC.

Evidently the preceding arrangements for obtaining information were found inadequate and in 1857 the legislature in 54 O. L. 23 extended the power with reference to inspection and added two new instrumentalities for discovery as follows:

3. A legal action for discovery now embodied in §11555, GC.

This is especially adapted to the needs of the party who may be unable to plead his case without information from his opponent.

4. The interrogatory section above quoted by which, if a party has pleaded his cause, may obtain from his opponent information which will assist him in building his case.

It is interesting to note that the first three information getting devices above enumerated appear in the chapter on evidence, and that the last one, the interrogatory feature is in the chapter on pleading, and these provisions have occupied their respective places ever since they became a part of the civil code.

The immediate problem for our consideration is:

What use may a party make of the interrogatory measure?

Practically no attention has been given this problem either by the Supreme or an intermediate court. Three very able trial courts have rendered opinions which shed helpful light upon the subject. The first of these were opinions by Judge Okey rendered in 1862:

Devore v Dinsmore, 4 W. L. N. 144; 2 Dec. Re. 600, and Templeton v Morgan, 4 W. L. N. 146; 2 Dec. Re. 602.

More light came in 1904 from Judge Dil-

lon of Franklin Common Pleas in Graham v Telegraph Co., 2 N.P. (N.S.) 612; 15 Dec. 200, and in 1907 from Judge Roberts in Ashtabula Common Pleas, now the Seventh Appellate District, in the case of Russell v Railway, 6 N.P. (N.S.) 353; 17 Dec. 435.

It is not my purpose herein to reiterate the information and reasoning of these decisions, but their conclusions are adopted by me. I only hope to add some additional considerations to the subject.

The Supreme Court of Ohio has expressed its characterization of these legal means of obtaining information from an opponent in Chapman v Lee, 45 Oh St 356-365:

"Suits for discovery were, in equity practice, auxiliary proceedings, brought not to obtain any equitable remedy, nor to establish any equitable right, but to aid in maintaining a legal right, and in prosecuting actions pending, or to be brought, in a court of law. If a party could not succeed without the aid of facts within the personal knowledge of his adversary, he might file his bill, setting forth all the facts within his knowledge, and adding interrogatories which the other party was required to answer fully under oath." * * *

"All the aid which a suit for recovery would give is now given by our code in the case at law itself. The party may attach to his pleading interrogatories which, so far as pertinent, the other party is bound to answer, and those answers may be used by either party as evidence. He may also take the deposition of the opposite party, or put him on the stand as a witness at the trial. The doctrine and rules concerning the subject-matter of discovery established by courts of equity, are believed to be still in force and to control the same matters in the new procedure, but the bill of discovery, as a separate action, is practically obsolete in this state." * * *

It is significant that the Act of 1857 followed closely a very similar law enacted in England in 1854 known as the English Common Law Procedure Act, of which §51 is somewhat like our interrogatory section, §11348 GC and Lord Campbell construing this section and its purpose said in Whateley v Crowter, 34 E. L. & E. 200; 119 Reprint 645:

"I think the interrogatories must be confined to matters which might be discovered by a bill of discovery in equity. I adopt the rule in the very terms used by Sir

James Wigram [Wigram on Discovery, 261 (2d ed.)]: 'The right of a plaintiff in equity to the benefit of the defendant's oath, is limited to a discovery of such material facts as relate to the · plaintiff's case—and does not extend to a discovery of the manner in which the defendant's case is to be established, or to evidence which relates exclusively to his case.' You may inquire into all that is material to your own case, though it should be in common with that of your adversary; but you may not inquire into what is exclusively his case." * * *

Having regard for the suggestion of the Supreme Court in Chapman v Lee as quoted above, that "rules concerning subject matter of discovery" are still in force and control the same matter in the "new procedure," it is necessary to know the purpose of discovery.

Looking to Pomeroy's Equity Jurisprudence, §201, (4th ed.):

"The fundamental rule on this subject is, that the plaintiff's right to a discovery does not extend to all facts which may be material to the issue, but is confined to facts which are material to his own title or cause of action; it does not enable him to pry into the defendant's case, or find out the evidence by which that case will be supported. The plaintiff is entitled to a disclosure of the defendant's title, and to know what his defense is, but not to a statement of the evidence upon which the defendant relies to . establish it." * * *

As explaining the proper use of discovery this authority has been adopted and quoted by many courts, including the Ohio trial court opinions cited above.

Hence we must conclude the interrogatory feature of our law is intended only to aid a party in supporting ▉▉▉▉▉▉ his own case, and not to help him to destroy his opponent's cause. This is in harmony with decisions in other states where this problem has been up for solution.

Knight v Empire Land Co., 55 Fla. 301; 458. 1025 Action for taking and conversion of turpentine from plaintiff's trees. Defendant sought to require answers from plaintiff:

"Such interrogatory sought to require the plaintiff to state the number of trees upon its land that had been boxed for turpentine, and the number of barrels of dip or gum that had been taken therefrom, and for how long a time and when the trees on said land had been worked for turpentine, and by whom. All of these matters of inquiry constituted the plaintiff's case, to establish which and to recover damages for which was the object of its suit. In other words, they were merely of a fishing character, and sought exclusively for the case of the plaintiff." Neske v Burnes (1930) N. J. Sup. 149 Atl. 761.

Interrogatories asked plaintiff extent of injuries, hospital, and time confined there and at home, business engaged in, wages lost, value of auto.

"The purpose of interrogatories is to supply a party with information which is within the peculiar knowledge of his adversary and which is essential to the preparation of his case for trial." * * *

"In the present case issue is joined, the burden is on the plaintiff; therefore plaintiff could propound interrogatories within the peculiar knowledge of defendant and defendant could propound interrogatories to plaintiff if they charge contributory negligence, for the purpose of assisting them in proving this defense. The evidence which defendant seeks is not for the purpose of sustaining the burden. It is simply for the purpose of confirming the production of evidence within the limits of such answers as plaintiff might give in answer to the interrogatories propounded." Downie v Nettleton (1892) Conn., 24 Atl. 977.

After quoting Pomeroy's Equity Jurisprudence, above quoted says:

"The statute (referring to interrogatory provision) was not designed to enlarge the scope of an equitable principle, but simply to enable a court of law, in administering legal remedies, to exercise a clearly-defined power of a court of equity."

Both the legislative and judicial development of this subject in Massachusetts are helpful to an understanding of it.

As in our state, prior to 1852 information from an opponent was had by equitable suit for discovery. That year an interrogatory statute was enacted which provided in legal actions for inquiry by one party from another.

Construing that statute Justice Biglow in Wilson v Webber, 68 Mass. (2 Gray) 558 (1854) said:

"It authorizes the plaintiff and the defendant, · within a prescribed period of

time, to file interrogatories 'for the discovery of facts and documents material to the support or defense of the suit, to be answered on oath by the adverse party;' that is, the plaintiff may interrogate upon any matter material to the support of his case, and the defendant upon those material to his defense. But it does not authorize the plaintiff to inquire concerning facts or documents which may be material in support of the defense; nor the defendant to seek a disclosure of those which go to make up the proofs in support of the plaintiff's case. Each party is to be confined to those matters which are material to sustain the case which he sets up by his pleadings; he is to be allowed to obtain, by interrogating his adversary, proofs of his own case, but not those which establish the case set up against him."

The purpose of this new legal device to obtain information was clearly stated as folllows:

"The main purpose of these provisions of the practice act was to substitute, in place of the tedious, expensive and complex process of a bill of discovery on the equity side of the court, an easy, cheap and simple mode of interrogating an adverse party, as incident to and part of the proceedings in the cause in which the discovery was sought. It was not intended to make the parties to a cause witnesses, who might, at the pleasure of the party interrogating, be made to testify respecting the whole case; but only to give a limited right to obtain evidence from an adverse party, in analogy to the well settled rules regulating bills of discovery in the court of chancery in England. In regard to these, it has always been held by that court, that the right of a plaintiff in equity to the defendant's oath is limited to a discovery of such material facts as relate to the plaintiff's case, and does not extend to a discovery of the manner in which the defendant's case is to be established, or to evidence which relates exclusively to his case."

This prevailed and was followed in:
Sheren v Lowell, 104 Mass. 24 (1870).
Wetherbee v Winchester, 128 Mass. 293 (1880).

In 1909 the interrogatory statute was changed to permit

"interrogatories to the adverse party for the discovery of any facts and documents admissible in evidence at the trial of the action, except as hereinafter provided."

In Looney v Saltonstall (1912) Mass. 98 NE 698, Chief Justice Rugg discussed the broadening effect of this change in the law, and the application of the older law in Wilson v Webber (supra) and Wetherbee v Winchester (supra):

"The statute of 1909 has modified the law as thus declared. Each party is no longer confined to matters strictly in support of his own case. He may inquire as to anything which would be competent in evidence, subject to the narrowing effect of §63."

In the very recent case of Goldman v Ashkins (1929) Mass. 165 NE 513, Chief Justice Rugg made more specific application of the 1909 change.

Looking again at the character of defendant's questions it is obvious they relate entirely to the plaintiff's ▉▉▉▉▉ ▉▉ case, and their only use to the defendant is to disclose to him what plaintiff's evidence will be in establishing his damages. The information their answers would bring the defendant would not aid him in establishing his defenses, he has none on which he bears any burden. In other words they only "pry into" the plaintiff's case.

This conclusion is supported by statement of counsel for defendant in his brief attached to his motion to dismiss when he says, speaking of the first interrogatory:

"After learning plaintiff's valuation the defendant is entitled, in preparing for trial, to investigate and perhaps secure other witnesses who would be able to testify to valuations different from those fixed by plaintiff."

The demurrer to each interrogatory will be sustained, and that being done it is not necessary to consider the defendant's motion to dismiss for failure to answer them.