**LEEPER, Plaintiff, v. NIMER, Defendant.**

Common Pleas Court, Summit County.

No. 175044. Decided September 5, 1950.

Sacks & Subrin, Akron, for plaintiff.
Harris, Wise, Roetzel, Maxon, Kelly and Andress, Akron, for defendant.

## OPINION

By WATTERS, J.

This matter comes before the court upon demurrer of the

defendant to each and every interrogatory propounded by plaintiff and attached to the plaintiff's amended petition.

This subject has always been rather confusing to the courts generally and to this court in particular.

Interrogatories are filed by virtue of and under §11348 GC, entitled, "Annexing interrogatories to pleadings" which in part is as follows:

"**Sec. 11348 GC**—A party may annex to his pleading, other than a demurrer, **interrogatories pertinent to the issue made in the pleadings,** which interrogatories, if not demurred to, shall be plainly and fully answered under oath * * *." (Emphasis ours.)

In the court's opinion the words, "pertinent to the issue made in the pleadings," does not restrict the scope of the interrogatories to such as will enable plaintiff to properly plead his case on paper before trial.

We find in §11350 GC this—"On the trial such answers, so far as they contain competent testimony on the issues made, may be used by either party."

This method was provided to take the place of the old bill of discovery procedure which was cumbersome and expensive. However even there the purpose was to enable a party to obtain such facts as might tend to prove his case, and not for the sole purpose of enabling him to plead his case properly on paper.

See Wigmore Section 1846, citing Combe v. London, 4 Y and C, 139.

See also Warren v. DeCote, 269 Mass., 415; 169 N. E. 505.

The court wishes to call attention of counsel to the very interesting discussion of this subject by Attorney Byron E. Ford of Columbus before the Ohio State Bar last May (1950) which appears in the Ohio Bar for August 7, 1950. He says in part on page 419:

"The test of an interrogatory is whether it is 'pertinent to the issue.' Like many words, the word 'pertinent' can be used with some degree of elasticity by the courts. Generally speaking, the phrase means that interrogatories must be directly connected with the subject matter of the action or defense. If the answer, if in the affirmative, will be helpful to the plaintiff in pleading or proving his case the interrogatory which elicits such answer is pertinent, and this

is ordinarily true even though the answer may at the same time expose the adverse parties' case. Graham v. Telephone Co., 2 O. N. P. (N. S.) 612, at p. 614."

The authorities agree however that although the interrogatories may be directed toward answers which will aid the party putting them, in the preparation of his case proper, they cannot be put so as to elicit from the answering party the nature of his defense. Of course the answers to some questions may also somewhat disclose the answerer's defense or claim.

Nor should an adverse party be compelled to answer interrogatories where the answers are within the knowledge of the interrogator.

In the final analysis the court has a great amount of discretionary power in the matter. After all a lawsuit should not be looked upon as a game or battle of wits. We should try to get at the ultimate facts, or at least those facts which are not in dispute, as is the theory in a pre-trial procedure. If we apply a reasonable and liberal interpretation, either side can use this method to advantage.

In this court's opinion we should adopt a liberal policy but should not extend it to such an extent as to allow this procedure to take the place of calling the defendant for cross-examination on deposition.

See also 31 O. Jur, 849; Ward v. Mutual Trucking Company, 22 Abs, 636; International Art. Publ. Co. v. Greenbaum, 28 Ohio N. P. (N. S.) 349.

The real issue in Schuldt v. Assoc. Investment Co., 61 Oh Ap 213, cited by the defendant's brief, was whether the plaintiff who had answered interrogatories put to him by the defendant could himself introduce said answers in evidence when the answers were made up of conclusions, hearsay and self-serving declarations, which answers would have been inadmissible and if given should have been stricken. The court held the answers offered by plaintiff should have been refused, and granted defendant a new trial because the court below admitted them under §11350 GC.

The court did say that the primary purpose of the statutes on interrogatories and discovery was to aid the questioner on his pleading, but did not say that was the only purpose.

There is no doubt that in the final analysis the answers if offered by either side at the trial to be admissible must be competent, and if the trial judge erroneously admits any answer, the question is reviewable.

The court will now apply to the various interrogatories

the law as the court understands it to be, with exceptions to each side according to the ruling.

Where ordered to answer, the defendant is not restricted to a "yes" or "no" answer.

Where no specific reason is assigned for overruling or sustaining the demurrer, the reason is the court's application of the law as I have found it to be.

INTERROGATORY NO. 1. "Did the defendant operate an automobile in a southerly direction on Greenwood Avenue, Akron, Ohio, on November 2, 1948, at or about 12:40 o'clock A. M., near the intersection of Copley Road, Akron, Ohio, which came into collision with an automobile proceeding westerly on Copley Road, which automobile had the plaintiff as one of its occupants therein?" **Overruled.**

INTERROGATORY NO. 2. "Did the defendant bring her automobile to a stop at the intersection of Greenwood Avenue and Copley Road before entering said intersection?" **Overruled.**

INTERROGATORY NO. 3. "Was the defendant charged by the City of Akron with the violation of the city ordinance requiring her to make a boulevard stop?" **Sustained.** (See No. 7.)

INTERROGATORY NO. 4. "Did the defendant appear before Judge Thomas M. Powers of the Municipal Court of Akron with reference to the charge set forth in Interrogatory No. 3?" **(Sustained.** See No. 7.)

INTERROGATORY NO. 5. "Did the defendant enter a plea to the charge of failing to make a boulevard stop in violation of the ordinance?" **(Sustained.** See No. 7.)

INTERROGATORY NO. 6. "What was that plea?" **(Sustained.** See No. 7.)

INTERROGATORY NO. 7. "Did the defendant plead guilty before Judge Thomas Powers of the Municipal Court of Akron, Ohio, to the charge of failing to make a boulevard stop on November 2, 1948, before entering the intersection on Copley Road, Akron, Ohio?"

**Sustained.** This is a matter of court record within the knowledge of plaintiff and his counsel, and if so can be shown as part of plaintiff's case in chief as an admission against in-

terest. At the trial the defendant could not be called as upon cross examination and asked this question by plaintiff. Defendant could be asked it, however, on cross-examination after testifying on direct.

INTERROGATORY NO. 8. "Did the defendant secure from the plaintiff a release dated December 30, 1948, wherein the recited consideration was $25.00 and which release related to the collision of November 2, 1948?" **Overruled.**

INTERROGATORY NO. 9. "Was the Manufacturers Casualty Company the agent and servant of the defendant in procuring said release?" **Overruled.**

INTERROGATORY NO. 10. "Was Wayne S. Hiltner the agent and adjuster of the Manufacturers Casualty Insurance Company for the purpose of negotiating for said release with Max Leeper and for the purpose of settling the claim of Max Leeper against the defendant?" **Overruled.**

INTERROGATORY NO. 11. "Did the Manufacturers Casualty Company, as agent of the defendant, through Wayne S. Hiltner, its agent, pay to Max Leeper the sum of $25.00 for said release?"

**Sustained.** This is within the knowledge of plaintiff.

INTERROGATORY NO. 12. "Was said release executed on December 30, 1948?"

**Sustained.** This is covered in No. 8.

INTERROGATORY NO. 13. "Did the defendant through its agent prepare said release?" **Sustained.**

INTERROGATORY NO. 14. "Was said prepared release delivered to Max Leeper by Wayne S. Hiltner personally?"

**Sustained.** The plaintiff knows of this personally.

INTERROGATORY NO. 15. "Was said release sent in the mail by Wayne S. Hiltner to the plaintiff?" **Sustained.** The plaintiff knows of this personally.

INTERROGATORY NO. 16. "Did Max Leeper deliver said release in person to the defendant?"

**Sustained.** The plaintiff knows of this personally.

· INTERROGATORY NO. 17. "Was said release returned by mail from Max Leeper to the defendant?"

**Sustained.** The plaintiff knows of this personally.

INTERROGATORY NO. 18. "Did the defendant, through its agents, Manufacturers Casualty Insurance Company and Wayne S. Hiltner, prior to December 30, 1948, receive from Dr. Morris Kalmon, Second National Building, Akron, Ohio, a report of the physical examination of Max Leeper and of the injuries he sustained as a result of the accident of November 2, 1948?" **Overruled.**

INTERROGATORY NO. 19. "If the answer to Interrogatory No. 18 is 'Yes,' set forth the report verbatim." **Overruled.**

INTERROGATORY NO. 20. "Does the defendant have in her possession or control the report from Dr. Morris Kalmon on Max Leeper?" **Overruled.**

INTERROGATORY NO. 21. "Who has possession of that report at this time?" **Overruled.**

INTERROGATORY NO. 22. "Did the defendant, through her agents, Manufacturers Casualty Insurance Company and Wayne S. Hiltner, receive from any source whatever any other information as to the nature and extent of plaintiff's injuries following the collision set forth in the petition, except the report from Dr. Kalmon set forth in the answer to Interrogatory No. 19?" **Sustained.**

INTERROGATORY NO. 23. "If the answer to Interrogatory No. 22 is 'Yes' state the name and address of the person or persons furnishing such information and when and where it was received?" **Sustained.**

INTERROGATORY NO. 24. "Did the defendant or any of her agents at any time after said collision interview the plaintiff personally with regard to the injuries that he suffered following said collision?"

**Sustained.** This information is within plaintiff's knowledge.

INTERROGATORY NO. 25. "Did the defendant or her agents know on or before December 30, 1948, that Max Leeper had sustained a herniated cervical intervertebral disc following the collision?"

Sustained. This question assumes that the plaintiff did suffer the injury named.

INTERROGATORY NO. 26. "Did the defendant or her agents know the extent of the medical bills incurred by Max Leeper as a result of the collision set forth in the first cause of action?"

Sustained. This question obviously has to do with medical expenses plaintiff claims to have been put to after the release was signed and in connection with his injury as claimed now.

INTERROGATORY NO. 27. "If the answer to the prior question, Interrogatory No. 26, is in the affirmative, by whom was she informed?" Sustained. See No. 26.

INTERROGATORY NO. 28. "What injuries did the defendant or her agents know of or assume that Max Leeper had suffered as a result of the collision set forth in the first cause of action, at or before December 30, 1948?" Sustained.

INTERROGATORY NO. 29. "Did the defendant, through her agents duly authorized therein, receive a tender from the plaintiff of the consideration that he received for signing the release referred to in plaintiff's second cause of action?"

Sustained. This information is within plaintiff's own knowledge.

INTERROGATORY NO. 30. "If the answer to above is 'Yes,' when such tender received by the defendant?" Sustained. See No. 29.

INTERROGATORY NO. 31. "Was said tender refused by defendant, through her duly authorized agents, on the ground that the release was executed in good faith on the part of all parties concerned?"

Sustained. The answer to this could be no more than a mere legal conclusion.

Journal entry may be drawn accordingly overruling the demurrer as to Interrogatories Numbers 1, 2, 8, 9, 10, 18, 19, 20 and 21 respectively, and sustaining said demurrer as to Interrogatories Numbers 3, 4, 5, 6, 7, 11, 12, 13, 14, 15, 16, 17, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 31 respectively, with exceptions to both sides.