## SLOAN v. S. S. KRESGE COMPANY.

Common Pleas Court, Trumbull County.

No. 58722.   Decided January 23, 1951.

Luchette & Hoffman, Masury, for plaintiff.
Hoppe, Day & Ford, Warren, for defendant.

Common Pleas Judge of Geauga County sitting in Trumbull County by assignment.

### OPINION

By THOMAS, J.

By demurrer the plaintiff questions the propriety of the

entire set of interrogatories which the defendant has attached to its answer.

Plaintiff has sued the defendant for personal injuries claimed to have been sustained in a fall which she says she suffered in defendant's store, by reason of a pool of water on the floor.

Defendant either specifically or generally denies all of the plaintiff's claims except that it is a corporation conducting stores on West Market Street in Warren. It affirmatively charges "that the fall and injuries and damages, if any, sustained by the plaintiff were directly and proximately caused by the plaintiff's own negligence."

To its answer defendant attaches the following interrogatories:

1. What is the name and address of each doctor who attended the plaintiff? How many times and on what dates did each of them so attend her?

2. What is the name and address of each hospital at which plaintiff was attended? During what period of time was she confined to such hospital?

3. What is the name and address of each of the nurses, if any, by whom the plaintiff was attended, and as to each such nurse state whether she was registered or practical, and the dates each such nurse attended the plaintiff?

4. What is the name and address of the person, partnership or organization by whom the plaintiff claims to have been employed prior to the accident alleged in her petition? In what capacity; during what hours and for what rates of pay was she so employed? What is the amount of plaintiff's earnings during the year preceding February 6, 1950?

5. During what periods of time, if any, was the plaintiff absent from her employment following February 6, 1950?

6. Was the plaintiff paid for the time during which she was so absent from employment?

Plaintiff demurs to these interrogatories "for the reason that said interrogatories are not pertinent to the issue and are not a proper subject for interrogating the plaintiff in this cause." In short it is the contention of the plaintiff that "The Statute (Sec. 11348) is intended only to aid a party in supporting his own case and not to help him destroy his opponents cause of action." Supporting her contention the plaintiff cites **Ward v. Mutual Trucking Company, 1 O. O. 456, 22 Abs. 636,** and **Schuldt v. Associates Investment Co., 61 Oh Ap 213, 15 O. O. 148.**

The matter turns on the scope which interrogatories may take under §11348 GC. That section provides:

**422**

"Annexing interrogatories to pleadings. A party may annex to his pleading, other than a demurrer, interrogatories, pertinent to the issue made in the pleadings, which interrogatories, if not demurred to, shall be plainly and fully answered under oath, by the party to whom they are propounded, or if such party is a corporation, by the president, secretary, or other officer thereof as the party propounding requires."

The statute thus sanctions interrogatories which are "pertinent to the issue made in the pleadings." This language is plain and unequivocal.

First considering the words "issue made in the pleadings" those words are certain and unambiguous. Manifestly here the issue made in these pleadings embraces the following questions:

Was there a puddle of water on the floor of the store?

If so, was the puddle caused by any failure on the part of the defendant to exercise ordinary care?

If so did the plaintiff fall at the time and place claimed because of said puddle?

If so, was her fall contributed to by any failure to exercise ordinary care for her own safety?

If not, what injuries if any did she suffer thereby?

Then considering the word "pertinent" surely its meaning is not obscure. In human affairs generally as in law, the word "pertinent" means "belonging or related to the subject or matter in hand" Webster's New International Dictionary (1933 Edition); "Applicable, relevant" Black's Law Dictionary (Second Edition).

Hence any interrogatory which is pertinent, (that is applicable or relevant) to the "issue made in the pleadings" (that is the questions previously enumerated) seems clearly permissible under the plain and unequivocal language of §11348 GC.

Because there is no ambiguity or obscurity in the words "pertinent to the issue made in the pleadings" the court has no occasion to resort to any rules of statutory interpretation, in order to determine what these words mean.

"Where the language of a Statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation." 37 O. Jur. Section No. 278, p. 514, and numerous supporting cases.

And as Judge Wanamaker said in **Kroff v. Amrhein et al,** 94 Oh St, 282 at 285:

"Now, the right to judicially interpret a duly enacted statute is based upon some apparent uncertainty of meaning, some apparent ambiguity of terms, some apparent conflict or provision * * *. To interpret what is already plain is not interpretation but legislation, no matter by what name it may be called."

The Supreme Court has never directly and specifically interpreted the meaning of these words "pertinent to the issue made in the pleadings," as used in §11348 GC.

But the Supreme Court has quite recently considered §11551 GC, a related section of the General Code which contains language very similar to §11348 GC.

In the case of **In re Keough, 151 Oh St, 307, 39 O. O. 141,** the court was passing on the propriety of a demand for records of the Cleveland Transit System made in a deposition hearing by the plaintiff who sued the system for injuries claimed to have been sustained by reason of the negligence of one of the system's street cars.

At the plaintiff's request Keough, one of the system's commissioners, was subpoenaed by a notary public to produce

(1) The records showing what car barn street car No. 329 was kept in on November 21, 1946;

(2) Trip sheet records of said street car on the day in question and particularly during certain named hours;

(3) Names of the crew operating said street car on the day and during the hours mentioned.

Upon the refusal of the witness to produce and disclose said records he was cited by contempt whereupon he filed habeas corpus proceedings in the Supreme Court.

Defendant claimed among other things that by virtue of §11551 GC he was not required to turn over these records. That section provides:

"Books and writings. Upon motion, and reasonable notice thereof, the Court, in which an action is pending, may order the parties to produce books and writings in their possession or power which contain evidence pertinent to the issue, in cases and under circumstances where they might heretofore have been compelled to produce them by the ordinary rules of chancery. If the plaintiff fails to comply with such order on motion, the Court may give judgment for the defendant as in case of non suit; if a defendant fails to comply with such order, on motion, the Court may give judgment against him by default."

Before attention is directed to portions of Judge Stewart's

ruling in which he deals with this argument of the defendant, the similarity of the qualifying language in §11551 and §11348 GC should be noted:

**Sec. 11551 GC** "pertinent to the issue, in cases and under circumstances where they might heretofore have been compelled to produce them by the ordinary rules of chancery.
**Sec. 11348 GC** "pertinent to the issue made in the pleadings."

Defendant's argument in the Keough case closely followed and undoubtedly relied on the opinion of Judge Davis **In re Schoepf, 74 Oh St, 1.** There under circumstances very similar to those present in the Keough case, the plaintiff in a personal injury action against the Cincinnati Traction Company had sought in a deposition hearing to force Schoepf, a representative of said defendant to disgorge company records relating to the accident involving one of its street cars in which the plaintiff claimed to have been hurt.

In support of his opinion holding that Schoepf was improperly held in contempt for refusing to turn over said records Judge Davis, speaking for the court, said, at page 13:

"It was held in the case of Rauh, supra, that a notary public has power to punish a witness for contempt by imprisonment when the witness refuses to obey a subpoena duces tecum directing him to bring with him any book, writing or other thing under his control, which he may be compelled to produce as evidence. What may he be compelled to produce? And how may he be compelled to produce it? These questions are clearly answered by Section 5289 to 5293 inclusive of the Revised Statutes. Section 5289 provides that the Court may require the parties to an action 'to produce books and writings in their possession or power which contain evidence pertinent to the issues, in cases and under circumstances where they might heretofore have been compelled to produce the same by the ordinary rules of proceeding in chancery.' The sections providing for inspections and copies of writings, for reference to a master, and for action for discovery may be passed over as not material to the present discussion. Section 5289 limits the power to compel the production of books and writings, 1. To such as are pertinent to the issue and 2. To cases and under circumstances where the parties might heretofore have been compelled to produce the same by the ordinary rules of proceeding in chancery. Under these limitations could the court compel the production of the reports which were made to this witness under the rules of his company and for the purpose stated?

"The rule in chancery as to compelling the production of documents for the purposes of evidence and inspection is generally recognized and clearly defined. It is to the effect that a plaintiff is entitled to a discovery of such facts or documents in the defendant's possession or under his control as are material and necessary to the plaintiff's case; but that this right does not extend to a discovery of the manner in which the defendant's case is to be established, nor to evidence which relates exclusively to the defendant's case."

Judge Stewart, without expressly saying so, accepts defendant's contention that the right to secure documents by subpoena in a deposition hearing is limited and circumscribed by §11551 GC. But it is equally clear from his opinion that he interprets the limitations of §11551 GC ("pertinent to the issue, etc.") as meaning only that the documents sought must be relevant to the issues of the case.

In the course of upholding the contempt conviction of the petitioner, Judge Stewart says:

"The identity of the operators of a transportation vehicle involved in an accident is relevant in an action concerning such accident by one who claims to have been hurt therein. The kind of person an operator is, with reference to his competency or lack thereof or training or lack thereof, bears directly upon the question of the due care of a transportation company with reference to the operators to whom it entrusts its vehicles.

\*           \*           \*           \*

"Since petitioner's whole argument with reference to §11551 GC, is bottomed upon a question of relevancy, Gebauer was entitled under that section to the information he seeks in the subpoena with which the present case is concerned."

The name of defendant's operator, and the trip sheet covering the run on which the accident occurred out of which Gebauer's law suit grew manifestly involve records which strictly might be regarded as part of defendant's case. For unquestionably these were defendant's own records.

Plaintiff's interest in obtaining that information undoubtedly stemmed from a desire to determine in advance of trial, by deposition or by statement of said operator, exactly what the operator's story of the accident was. In one sense it is true that the defendant was thus required to disclose part of its defense. But more accurately defendant was only required to disclose information that was highly relevant to the issues of the action.

It appears therefore that the Supreme Court has now taken the sensible view that relevancy is the sole criterion for determining whether or not a document may be obtained pursuant either to §11551 GC employed alone or pursuant to the deposition procedure modified by §11551 GC.

If §11551 GC is now given that liberal and practical construction it necessarily follows that §11348 GC—the section presently involved—must receive a similar construction.

The comparison of the qualifying language of these two sections reveals great similarity but also substantial difference.

Both sections require that the power granted relates to matters that are "pertinent to the issue." On this point the two sections require the same ground.

But §11551 GC, unlike §11348 GC, adds the further condition that the power to produce documents is limited to "cases and under circumstances where the parties might heretofore have been compelled to produce the same by the ordinary rules of proceeding in chancery."

If this second condition no longer restricts the employment of the powers granted under §11551 GC (though this second condition is expressly provided) surely it must follow that this second condition **cannot possibly restrict the employment of the powers granted under §11348 GC—which Section does not and never has contained that second condition.**

Judicial "green light" to use the interrogatory power to the full extent permitted by the language of §11348 GC—to probe all matters that are relevant to the issues of the case—will be entirely in keeping with the broad expansion in the powers of discovery which is taking place in courts across the country.

The Federal Rules of Civil Procedure, Rule 33, and related rules 34, and 26b have given litigants in federal civil actions wide interrogatory powers of discovery, quite apart from the powers to take depositions, and to produce documents.

The spirit and rationale behind these new powers is well described by Justice Murphy in Hickman v. Taylor, 329 U. S. 495, 34 O. O. 395, 91 L. Ed. 451, at 460, which dealt with the use of the interrogatory power, and its limitations.

"We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to

disgorge whatever facts he has in his possession. The deposi-tion-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of sur-prise."

States which have adopted the Federal Rules in toto or in part, or have similar provisions are Arizona, Colorado, New Mexico, Delaware, Maryland, New Jersey, Florida, Iowa, Mis-souri, Texas, Pennsylvania and South Dakota. See Honor-able Charles E. Clark's Introduction to Federal Rules of Civil Procedure. (1950) West Pub. Co.

In Ohio the power to take depositions of opposing parties and witnesses, (§11521 GC et seq) though there were early efforts to limit its use (see Thomas v. Beebe, 5 O. N. P. 32) as early as 1901 was broadly held to depend upon the "com-petency of the evidence." In re Rauh, 65 Oh St, 128, at 135. Until the adoption of the Federal Rules the scope of dis-covery by deposition was broader in Ohio than in other jurisdictions.

No statutory reason explains why Ohio courts have permitted full latitude in the use of discovery by deposition, but have denied equivalent latitude in the use of discovery by inter-rogatory. Thoughtful and experienced lawyers have pointed out that "interrogatories attached to pleadings afford a simple, inexpensive way of getting information from an ad-verse party * * *" but point out that their scope has been limited. Address by Byron E. Ford of Columbus to the Ohio State Bar, Ohio Bar, August 7, 1950.

He voiced the further view that "that the words of the statutes do not so limit the use of interrogatories (after re-ferring to the cases which are here cited by the plaintiff) but the courts have consistently held that, since the statutory enactments were intended to take the place of bills for dis-covery in equity, the rules of practice under the old equitable action of discovery apply to interrogatories under the code." (Paranthetic matter added.)

This court agrees that the words of §11348 GC do not and cannot warrant the restrictions placed upon the use of the interrogatory power by these prior court decisions. Therefore those decisions will not be followed.

The Supreme Court, In re Keough, supra, holds that under §11551 GC any document may be obtained which is relevant to the action and which is not privileged.

Relevancy to the issues of an action is made the test of the propriety of an interrogatory under §11348 GC by its words "pertinent to the issue made by the pleadings."

It follows that the liberal interpretation of §11551 GC adopted by the Supreme Court in the Keough case, supra, applies with even greater force to §11348 GC.

Accordingly it is concluded that a party may propound any interrogatory which seeks from his opponent information which is relevant to the issues of the action, and which information is not privileged.

The information sought by the defendant relates to the issue of the nature and extent of the plaintiff's injuries, and the issue of the damages. The interrogatories are therefore "pertinent to the issue made by the pleadings." None of the questions ask for information which is privileged.

Plaintiff's demurrer to defendant's interrogatories is therefore overruled. Defendant may prepare an appropriate entry.