ELLEN D. LOONEY *vs.* JOHN L. SALTONSTALL & another, administrators with the will annexed.

Essex.   March 8, 1912. — May 24, 1912.

Present: RUGG, C. J., BRALEY, SHELDON, & DeCOURCY, JJ.

*Practice, Civil,* Interrogatories.

The limitation in R. L. c. 173, § 63, as interpreted in *Wilson* v. *Webber*, 2 Gray, 558, of the right to interrogate an adverse party given by § 57 of that chapter, so that such right did not include a right to a disclosure either of the facts by which or the medium through which the interrogated party proposed to prove his case, is not affected by St. 1909, c. 225, which amends § 57 by inserting in its place a provision giving a right to interrogate an adverse party "for the discovery of any facts and documents admissible in evidence at the trial of the action, except as hereinafter provided."

CONTRACT upon an account annexed against the defendants as administrators with the will annexed of the estate of Susan B.

Cabot for the making of various dresses for the testatrix. Writ dated December 16, 1909.

The answer contained a general denial and an allegation of payment by the testatrix in her lifetime.

The defendant filed fifty-three interrogatories to the plaintiff, among which were groups of a similar character, each group referring to a different item in the account annexed to the declaration. These interrogatories were in substance as follows:

"Did you do any work for Susan B. Cabot [on the date mentioned in an item of the declaration?]

"If you answer 'Yes' to the preceding interrogatory, what work did you do and where did you do it?"

"If you answer 'Yes' to [a preceding] interrogatory [which inquired if the plaintiff had any agreement as to price to be paid for the work referred to in the item in question,] state in full the terms of the agreement as to the work done on the date in question, stating as fully as you are able, all that was said by you or Susan B. Cabot as to the work to be done, the price to be paid, and the time at which the payment was to be made.

"Did you have any conversation with Susan B. Cabot at any time, which would tend to explain the reason why she should not have paid for any work which you did for her [on the date in question] before her death?

"If you answer 'Yes' to the preceding interrogatory, state as fully as possible the time and place of said conversation, and what was said by you and Susan B. Cabot in the course of said conversation."

There also were the following interrogatories relating to the items in the account annexed as a whole:

"Do you know any facts which would tend to explain the reason why Susan B. Cabot did not pay in her lifetime for work which you did for her?

"If you answer 'Yes' to the preceding interrogatory, state fully all such facts which you know.

"If you answer 'Yes' to interrogatory [second above], state fully all such facts concerning which you have any information and the sources of your information."

"Will you, for the purpose of answering the . . . interrogatories, examine all your books of account, memoranda and

other writings in your possession or control, or accessible to you?"

"Have you kept any books or memoranda showing your account with Susan B. Cabot since July 1, 1904?

"If you answer 'Yes' to the preceding interrogatory, in what form have you kept said memoranda or account, and where have you kept it?

"If you answer 'Yes' to interrogatory [second above], have you said memoranda now in your possession or control, or in the possession or control of your attorneys?

"Have you used said account or memoranda for the purpose of obtaining information in order to answer the foregoing interrogatories? Kindly attach the original of said account or memoranda referred to in this interrogatory or a true copy thereof to your answers to these interrogatories."

"Have you referred to any memoranda mentioned in the preceding interrogatories in your answers to the three preceding interrogatories? If so, please annex a full and complete copy of the memoranda to which you have referred."

The plaintiff refused to answer any of the interrogatories above described, stating as her reasons for refusing "that said interrogatories do not appear to have any application to the defendants' case as set forth in their answer; that they ask for evidence relating to the plaintiff's case and not to the defendants', and that they seek to ascertain the way and manner in which said plaintiff proposes to prove her case." The defendant moved that the plaintiff be required further to answer the foregoing interrogatories among others. The motion was heard by *Richardson,* J., who denied it as to the interrogatories above described; and the defendant alleged exceptions, which after the death of *Richardson,* J., were allowed by *Pierce,* J.

*H. L. Sampson,* for the defendants.

*J. J. Higgins,* (*A. A. Gleason* with him,) for the plaintiff.

RUGG, C. J. This case involves a construction of R. L. c. 173, § 57, as amended by St. 1909, c. 225, which substituted a new section, and which relates to interrogatories in civil actions.*

* R. L. c. 173, § 57: "The plaintiff, after the entry of the action, and the defendant, after answer, or in a real or mixed action, after plea, and before the opening of the trial on the merits, may file in the clerk's office or in the

This amendment, although adverted to in *Grebenstein* v. *Stone & Webster Engineering Co.* 205 Mass. 431, 439, never has been interpreted. A comparison of the old with the new section reveals certain obvious and important changes. In the earlier statute parties were not quite on the same basis as to the time of filing interrogatories. The plaintiff could file them after the entry of the action, but the defendant could do so only after he had completed his pleadings. By the amendment, all parties stand on the same footing, and may file interrogatories after the entry of the action. The earlier statute confined the right of each party to inquiries aimed at the discovery of facts and documents material to the support of the contentions set up by his own pleadings. The amendment removes this definite restriction, and permits interrogatories as wide in scope as the issues presented for trial, subject, however, to the single limitation, "except as hereinafter provided." These words manifestly refer to R. L. c. 173, § 63, which provides in substance that no party shall be compelled by an answer to criminate himself or to disclose title to property not material in the trial, or "to disclose the names of the witnesses by whom, or the manner in which, he proposes to prove his own case." These words have been in our practice act without significant change since the matter was first dealt with in St. 1851, c. 233, § 106. The same is true of § 57 prior to its amendment in 1909, it having first appeared in § 98 of St. 1851, c. 233.

These two sections as they appeared in the practice act of the next year, St. 1852, c. 312, §§ 61, 69, were construed by Mr. Justice Bigelow speaking for the court, in *Wilson* v. *Webber*, 2 Gray, 558, who said, "the plaintiff may interrogate upon any matter material to the support of his case, and the defendant

---

. office of a justice who has no clerk, or with a trial justice, interrogatories to the adverse party for the discovery of facts and documents material to the support or defence of the action."

St. 1909, c. 225: "Chapter one hundred and seventy-three of the Revised Laws is hereby amended by striking out section fifty-seven and inserting in place thereof the following: — *Section* 57. Either party after entry of the action and before the opening of the trial on the merits may file in the clerk's office or in the office of a justice who has no clerk or with a trial justice, interrogatories to the adverse party for the discovery of any facts and documents admissible in evidence at the trial of the action, except as hereinafter provided."

upon those material to his defense. . . . Each party is to be confined to those matters which are material to sustain the case which he sets up by his pleadings; he is to be allowed to obtain, by interrogating his adversary, proofs of his own case, but not those which establish the case set up against him." See to the same effect *Wetherbee* v. *Winchester*, 128 Mass. 293, and *Davis* v. *Mills*, 163 ⌐Mass. 481. The statute of 1909 has modified the law as thus declared. Each party is no longer confined to matters strictly in support of his own case. He may inquire as to anything which would be competent in evidence, subject to the narrowing effect of § 63. The limiting words of that section material to this case prohibit interrogatories, the answers to which would disclose "the manner in which" the adverse party "proposes to prove his own case." As to the meaning of these words, it was said in *Wilson* v. *Webber:* "This provision is entirely inconsistent with the theory that by § 61 [now R. L. c. 173, § 57] a right was given to a party to seek by interrogatories a disclosure of the case that was to be set up against him; because such a right could not be exercised to any effective purpose under such a restriction as is imposed by § 69 [now R. L. c. 173, § 63]. It is difficult to imagine a question, relative to material facts in support of a case against a party, the answer to which would not necessarily involve a disclosure of the mode of its proofs." In terms this case holds that the manner in which a case is to be proved (as these words are used in the statute) mean the substance as well as the form by which a case is to be supported. It relates not merely to the medium of proof, but includes also the facts to be proved. This language and the amplification of interpretation given to this section in *Wilson* v. *Webber* have been left unaffected by the amendment of St. 1909, c. 225. The exception contained in its last clause in effect imports into its terms the provisions of § 63 as it had been interpreted by decisions of this court. *Wilson* v. *Webber*, still correctly states the law in this respect in view of St. 1909, c. 225. It has been said that the re-enactment without change of a statute, which has received previously a long continued executive construction, is a legislative adoption of such construction. *United States* v. *Hermanos y Compañia*, 209 U. S. 337, 339. *Komada* v. *United States*, 215 U. S. 392. The reason is all the stronger for the assumption that the interpretation given by

the court of last resort to language employed in a statute is adopted and approved by the legislative department when that statute is re-enacted without substantial change. *Welch* v. *Boston,* 211 Mass. 178.

The result is that St. 1909, c. 225, has enlarged the time within which interrogatories may be propounded by any party to that intervening between the entry of the action and the opening of the trial on the merits, and that the scope of the questions which may be asked is as broad as the field which would be permitted if the person interrogated was called as a witness to testify orally in the actual trial, except as it is limited by the language of R. L. c. 173, § 63, according to its definition set forth in *Wilson* v. *Webber,* 2 Gray, 558, and other decisions following it. *Davis* v. *Mills,* 163 Mass. 481. *Spinney* v. *Boston Elevated Railway,* 188 Mass. 30, 37. *Robbins* v. *Brockton Street Railway,* 180 Mass. 51, 55. *Gunn* v. *New York, New Haven & Hartford Railroad,* 171 Mass. 417, 421. *Carroll* v. *Boston Elevated Railway,* 200 Mass. 527, 532.

The practical effect of the enlargement of the scope of inquiry wrought by the statute of 1909 is not easy to define. But for example it probably includes interrogation as to specific facts in contradiction of a definite claim set up by the adverse party, and as to which he has the burden of proof.

It is not feasible to do more than lay down the general rule and leave each case to be tested by it as occasion requires.

We understand that the defendants have not argued that their interrogatories should have been answered unless St. 1909, c. 225, has changed the effect of R. L. c. 173, § 63, as interpreted by *Wilson* v. *Webber.* But however that may be, a careful examination of the questions in detail does not show the commission of any error in the Superior Court. Either as disclosing the substance of the plaintiff's case, the means of its proof, as being immaterial, calling for the expression of an opinion, or the failure to answer being not harmful, the order was right in not requiring further answer.

*Exceptions overruled.*