[S. F. No. 18781. In Bank. Mar. 12, 1954.]

DION R. HOLM, City Attorney, etc., et al., Petitioners, v. SUPERIOR COURT FOR THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; WYNONA BELL, Real Party in Interest.

§

Dion R. Holm, City Attorney (San Francisco) and Donald J. Kropp, Deputy City Attorney, for Petitioners.

Bronson, Bronson & McKinnon and Roy Bronson as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Shirley, Saroyan, Calvert & Barbagelata and J. Francis Shirley for Real Party in Interest.

SHENK, J.—The petitioners seek a writ of prohibition to restrain the respondent court from enforcing its order for the inspection of certain documents in their possession. An alternative writ was issued.

The order was made in an action in which Wynona Bell, referred to as the plaintiff, seeks to recover damages from the

petitioners Raymond Gnecco and the city and county of San Francisco for personal injuries alleged to have been suffered by her due to the alleged negligent operation by Gnecco, an employee of the city's municipal railway, of a bus on which she was a passenger. The petitioners Dion R. Holm and Donald J. Kropp are attorneys at law who at all times involved represented the city and county. They are also the legal representatives of Gnecco as an employee of the city and county in the action for damages. Before trial in that action the plaintiff moved under section 1000 of the Code of Civil Procedure for an order permitting her to inspect, among other things, (1) a document containing a signed statement made by her to a claims investigator of the municipal railway concerning the facts of the accident; (2) written reports by Gnecco to the city setting forth his version of the accident, and (3) photographs taken at the scene of and following the accident by agents of the city.

The pertinent parts of section 1000 provide: "Any court in which an action is pending, or a judge or justice thereof may, upon notice, order either party to give to the other, within a specified time, an inspection and copy or permission to take a copy, of entries of accounts in any book, or of any document or paper in his possession, or under his control, containing evidence relating to the merits of the action, or the defense therein . . ."

In support of the motion for the order of inspection it was stated in affidavits on behalf of the plaintiff that she had signed a written statement setting forth factual information material to the controversy, the contents of which she could not remember and a copy of which had not been furnished her. It was stated in an affidavit of the plaintiff's counsel that the documents involved were recorded and preserved in the "regular course of business of defendants in the operation of the Municipal Railway." It is claimed that a deposition of the petitioner Gnecco, not made a part of the record here, also contains evidence that the reports were filed in the regular course of business. There is no further reference to the purpose of the documents in the complaint, the notice of motion, other supporting affidavits or in any other documents which are a part of the plaintiff's record. The deputy city attorney and the general claims agent for the Municipal Railway, in affidavits filed on behalf of the petitioners, stated that the questioned documents had been kept in confidence in the possession or control of one of them since

they were made; that they were in the possession of the attorney at the time of the demand for their production; that they were secured and kept in confidence for use by the attorneys for information and aid in defending in any litigation arising out of the accident, and that the documents are protected by the attorney-client privilege.

The foregoing was the only evidence before the court. The motion was granted as to the documents involved, and the court ordered the petitioners to produce them. Thereafter a motion to vacate the order was denied. The petitioners refused to comply with the order asserting that the court lacked jurisdiction to make it. The court threatens to enforce its order by contempt proceedings and the petitioners seek to restrain its enforcement by this application for the writ of prohibition.

■ The order is not appealable and prohibition is the proper remedy. (*City & County of San Francisco* v. *Superior Court*, 38 Cal.2d 156 [238 P.2d 581]; *Franchise Tax Board* v. *Superior Court*, 36 Cal.2d 538 [225 P.2d 905].)

The petitioners' main contentions are that the attorney-client privilege (Code Civ. Proc., § 1881, subd. (2)) bars inspection of the papers; that section 1000 of the Code of Civil Procedure is no broader than the historical bill of discovery in equity, and that by reason of the limitations of the latter, the documents may not be inspected.

■ In regard to the latter contention it is true that there formerly was no right in equity to inspect an adversary's documentary evidence. (6 Wigmore, Evidence, 3d ed., 1940, § 1857, p. 443.) ■ However, while the cases hold that section 1000 is based upon the bill of discovery in chancery courts (*Union Trust Co.* v. *Superior Court*, 11 Cal.2d 449 [81 P.2d 150, 118 A.L.R. 259]; *Wright* v. *Superior Court*, 139 Cal. 469 [73 P. 145]), they do not hold that the equitable rule establishes a limitation on the scope of our code section.

■ Where the use of the statutory bill of discovery is denied by our courts it usually is because the information sought to be obtained is not relevant or material to any of the issues in the case. (*Union Collection Co.* v. *Superior Court*, 149 Cal. 790 [87 P. 1035]; *Ex parte Clarke*, 126 Cal. 235 [58 P. 546, 77 Am.St.Rep. 176, 46 L.R.A. 835].) ■ It has been said that the documents also must be properly identified and admissible in evidence at the ensuing trial. (*McClatchy Newspapers* v. *Superior Court*, 26 Cal.2d 386 [159 P.2d 944].) But none of the cases hold that section 1000 is to be construed

as narrowly as the petitioners contend. ■ On the contrary, in *Union Trust Co.* v. *Superior Court, supra,* 11 Cal.2d 449, this court stated at page 462: ''That the trend of judicial decisions is to relax the rules which relate to the taking of evidence by ancillary proceedings of which the inspection of documents is one method. . . .'' It further quoted from Corpus Juris, volume 18, page 116, to the effect that provisions such as section 1000 are ''remedial in their nature and should be liberally construed.'' (See also *Austin* v. *Turrentine,* 30 Cal.App.2d 750 [87 P.2d 72, 88 P.2d 178].)

■ Section 1000 provides in part that when an adversary refuses to comply with an order of inspection, the court ''may exclude the entries of accounts of the book, or the document, or paper from being given in evidence. . . .'' It is apparent that this could apply only to documents in support of the adversary's own case. It has been said, without discussion of the point here involved, that inspection was proper in a case where account books bore evidence of the adversary's own case. (*Avery* v. *Wiltsee,* 177 Cal. 484, 488 [171 P. 95]; see also *Superior Ins. Co.* v. *Superior Court,* 37 Cal.2d 749 [235 P.2d 833]; *Demaree* v. *Superior Court,* 10 Cal.2d 99 [73 P.2d 605].)

■ There is no question but that the documents here sought to be inspected are material and relevant to questions in issue, would be admissible in evidence, and are within the scope of section 1000 of the Code of Civil Procedure, subject to their confidential nature.

The right to maintain the security of a confidential communication under the attorney-client privilege is set forth in section 1881 of the Code of Civil Procedure which states in part: ''There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person can not be examined as a witness in the following cases . . . 2. *Attorney and Client.* An attorney can not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment . . ..'' (See also Bus. & Prof. Code, § 6068, subd. (e).) ■ Where the right to assert the privilege is clear it should follow that the bill of discovery cannot be used to defeat it.

■ The objective of making a particular communication privileged is to encourage a client to make a complete dis-

closure to his attorney without fear that others may also be informed. (*City & County of San Francisco* v. *Superior Court,* 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418] ; 8 Wigmore, Evidence, *supra,* § 2380a, p. 813.) ▮ The privilege attaches where the communication is made in confidence pursuant to a client-attorney relationship with respect to the particular matter. (*McKnew* v. *Superior Court,* 23 Cal.2d 58, 65-66 [142 P.2d 1].) ▮ Thus there would seem to be no privilege in a communication which is not made to or for further communication to an attorney, although the communication might have some connection with possible liability in the future, such as reports submitted in the regular course of business for study in accident prevention. ▮ Nor does the privilege attach to a communication not intended to be of a confidential nature. (*City & County of San Francisco* v. *Superior Court, supra,* 37 Cal.2d 227, 234-235; *McKnew* v. *Superior Court, supra,* 23 Cal.2d 58, 66.) ▮ To make the communication privileged the dominant purpose must be for transmittal to an attorney "in the course of professional employment." (Code Civ. Proc., § 1881, subd. (2) ; *City & County of San Francisco* v. *Superior Court, supra,* 37 Cal.2d 227, 235.)

▮ In any given situation it is necessary that a determination be made concerning the facts asserted as a basis for the privilege. This determination is for the trial court in the first instance. Where it is clear that the communication has but a single purpose, there is little difficulty in concluding that the privilege should be applied or withheld accordingly. ▮ If it appears that the communication is to serve a dual purpose, one for transmittal to an attorney "in the course of professional employment" and one not related to that purpose, the question presented to the trial court is as to which purpose predominates. The question then is whether the conclusion of the trial court on the facts is correct or has resulted in an abuse of discretion.

▮ In the present case the plaintiff's statement to the city's claims investigator was recorded as she made it. After being transcribed she signed her name to the document. Her assertions that she was not given a copy of the statement and that she does not remember what she said are not disputed. She does not seek to have disclosed any communication from her adversaries to their attorneys. She merely seeks the record of a communication which she herself made

in an "arm's length" conversation and which was transmitted to her adversaries' attorneys. Clearly as to the document embodying this communication there is no attorney-client relationship, the communication was not made nor intended to be in confidence, and the privilege did not attach. Accordingly the document can properly be reached under the statutory provisions.

As to the reports and photographs it is clear that from their character and content they fall within the privilege. Both originated with agents of the city and it is undisputed that they were forwarded in confidence to the defendants' attorneys for use in possible litigation. It is stated in *City & County of San Francisco* v. *Superior Court, supra*, 37 Cal. 2d 227 at page 235: "The privilege embraces not only oral or written statements but actions, signs, or other means of communicating information by a client to his attorney." And at page 236-237: "It is no less the client's communication to the attorney when it is given by the client to an agent for transmission to the attorney, and it is immaterial whether the agent is the agent of the attorney, the client, or both. '[T]he client's freedom of communication requires a liberty of employing other means than his own personal action. The privilege of confidence would be a vain one unless its exercise could be thus delegated. A communication, then, *by any form of agency* employed or set in motion by the client is within the privilege . . . (8 Wigmore, *supra*, § 2317, pp. 616-617. . . .)'" It follows that where the communication is between corporate employees and is embodied in reports or photographic evidence for the purpose of redelivery to a corporate attorney the privilege attaches if the reports and photographs were created as a means of communicating confidential information to the attorney.

The present proceeding calls for the determination of the dominant purpose for which the reports and photographs were created. As previously stated, the affidavits of the petitioners in the trial court revealed that the documents were prepared as confidential communications to the city attorney in threat of litigation and that the documents had at all times been treated as such. These affidavits were uncontradicted as to the purpose of the documents. In this connection the plaintiff asserts only that they were prepared in the regular course of business. But there is no valid basis for a distinction between a communication created for transmittal to an attorney to prepare for threatened litigation following

particular accidents, and a communication prepared for an identical purpose under standing rules in the case of all accidents involving personal or property injury. Because the scope of the operations of the defendant city's municipal railway is such as to require communications of this nature as a routine matter, it cannot be said that the attorney-client privilege did not attach.

In any action for damages such as the pending one it is of considerable importance to obtain all information available at the scene of the accident in order to safeguard the rights of the party likely to be charged with negligence. It is because of this fact that diligence is required in behalf of such party to avoid or prepare for litigation. In view of the imminent possibility that the city would be faced with a claim involving substantial liability for personal injuries far exceeding financial considerations in any other respect, it is unreasonable and unrealistic to say that the communication of the documentary information to the attorneys for use in their professional capacity was not foremost and predominately in the minds of those securing and transmitting the same.

The court did not make specific findings of fact upon which its order for the production of the documents was based. However, in view of the undisputed evidence both as to the intended purpose and the actual practice followed any determination which would not accord greater importance to the purpose of communications to the attorneys in their professional capacities than to any other purpose would be an abuse of discretion. The attorney-client privilege is an important element in the effectiveness with which the counselor-at-law is to advise his client and safeguard the latter's interests. Where, as here, the right to the privilege is clearly established it should not be cast aside. The fact that the information contained in the communications might also be used for incidental purposes not entitled to the privilege is unimportant.

The question of the application of section 1000 of the Code of Civil Procedure as affecting the attorney-client privilege appears not to have been decided by any California court. However, in an analogous situation in *New York Cas. Co.* v. *Superior Court,* 30 Cal.App.2d 130 [85 P.2d 965], it was sought to perpetuate evidence under sections 2083-2086 of the Code of Civil Procedure. The court held that confidential reports of an accident procured for the use of an insurance

company's attorney were protected by the attorney-client privilege. Section 1000 was not referred to but the court cited with approval two Ohio decisions that dealt with discovery procedures. (*In re Klemann*, 132 Ohio St. 187 [5 N.E.2d 492, 108 A.L.R. 505]; *Ex parte Schoepf*, 74 Ohio St. 1 [77 N.E. 276, 6 L.R.A.N.S. 325].) Those cases dealt with an effort to obtain by *subpoena duces tecum* reports of an accident prepared by an insured for its insurer and insurer's attorneys. The Ohio court held the communications to the insurer to be privileged.

Numerous decisions in other states have held that where confidential reports were submitted by agents of a corporation for transmittal to the corporate attorney, the privilege attached as against proceedings for discovery. (See cases compiled in 146 A.L.R. at 988.) In many of the cases it was emphasized that the crucial question is the purpose for which the communication originated. In *Cully* v. *Northern P. R. Co.*, 35 Wash. 241 [77 P. 202], the court held that routine correspondence, reports and documents relating to the accidental injury of the plaintiff were privileged, the court stating : ''We can conceive of no reason why a different rule should apply in this case than prevails in the case of privileged communications generally.''

It is concluded that the confidential communications embodied in the reports and photographs are protected by the attorney-client privilege. As to those documents the peremptory writ is granted; as to the document containing the signed statement of the plaintiff to the defendant's investigator, the writ is denied. The alternative writ is discharged.

Gibson, C. J., Edmonds, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J., Concurring and Dissenting.—The primary object of the attorney-client privilege is to encourage the client to make a full disclosure of all the facts to his attorney. To achieve this object it is proper that the client should be allowed to employ whatever means of communication are necessary accurately to inform his attorney of the facts. (*City & County of San Francisco* v. *Superior Court*, 37 Cal.2d 227, 235-237 [231 P.2d 26, 25 A.L.R.2d 1418], and cases and authorities cited.) Accordingly, the privilege is not lost if the client casts his communication in the form of reports compiled by him or his agents for that purpose. Moreover,

in this respect there is no logical difference between an oral or written report of what the client or his agent saw and a photograph taken for the purpose of communicating the scene to the attorney. On the other hand, a document, report, or photograph that would otherwise be admissible in evidence does not become privileged merely because the client delivers it to his attorney. Unless a report or photograph is created for the purpose of communicating information to the attorney, it cannot have the character of a privileged communication when it comes into existence and accordingly cannot become privileged if it is later delivered to the attorney. (See 8 Wigmore on Evidence [3d ed.], § 2307, p. 594.)

No problem is presented if it is clear that the only purpose of preparing a report is to communicate it to the attorney. In many situations, however, reports will be made for other purposes as well. The question arises, therefore, whether the existence of purposes for preparing reports in addition to that of communicating with the attorney will defeat the privilege. This question may only be answered by evaluating the relative importance of the purposes present in the light of the object of the privilege, bearing in mind that it "is strictly construed, since it suppresses relevant facts that may be necessary for a just decision." (*City & County of San Francisco* v. *Superior Court, supra,* 37 Cal.2d 227, 234.)

If the purposes other than that of communicating facts to the attorney are so minor that the client would not create reports if no communication were contemplated, the existence of such purposes should not defeat the privilege. In such cases to encourage full disclosure it is necessary to encourage the creation of the reports, and accordingly, the object of the privilege is served by making them privileged. If, on the other hand, reasons unrelated to the seeking of legal advice or service would cause the client to create reports, they should not be privileged. In such cases the reports would be created in any event, and accordingly, whether or not they were privileged would not affect their being created. It follows, therefore, that in any case where reports are made, not only for the purpose of communicating to the attorney, but for other purposes as well, the object of the privilege is subserved only by making those reports privileged that would not be created but for the purpose of communication.

In the present case it is true that one reason the municipal railway secures accident reports from its employees and takes photographs is to communicate facts to its attorney. The

controlling question, however, is whether it would secure the reports and take the photographs in any event. The municipal railway is in the business of transportation and is required to exercise "the utmost care and diligence" toward its customers. (Civ. Code, § 2100.) It is under a duty to employ careful drivers and acquire and maintain safe equipment. When an accident occurs it must make an investigation of the facts, not only for the purposes of litigation that may arise therefrom, but also to enable it to eliminate careless drivers, maintenance men, and dangerous and defective equipment. It would be subject to a charge of continuing negligence in the operation of its system if it did not do so. Under these circumstances the trial court was justified in concluding that the accident reports and photographs would be made regardless of the purpose of communicating facts to the railway's attorney, and accordingly, they should not be privileged.

I concur in the conclusion of Mr. Justice Shenk that plaintiff's statement was not privileged.

I would deny the writ in its entirety.

CARTER, J.—I dissent.

The decision of the majority in this case is another step backward in the administration of justice—the denial of the power of a trial judge to force the adverse party to produce competent, material evidence germane to the issues in the case notwithstanding a showing that the evidence had been prepared in the ordinary course of defendant's business and was then available.

There can be no doubt that upon the facts stated in the affidavits before the superior court it could conclude either that the papers sought to be inspected were prepared for the purpose of litigation and transmittal to the attorney for Gnecco and the city, and hence privileged, or that they were not; that they were prepared in the regular course of business of efficiently operating the transportation system and hence not privileged. It chose to believe those supporting the latter view. I agree that the papers were properly inspectable under section 1000 of the Code of Civil Procedure but that they could have been privileged if they were prepared for the purpose of transmittal to the attorney in connection with pending or threatened litigation.

As stated by the District Court of Appeal when this case was decided by that court by unanimous decision (Cal.App.)

251 P.2d 35, 36-37; "While a party is to be protected from unnecessary disclosure to others of the contents of his private books, papers and records, as is said in *McKinley* v. *Southern Pac. Co.*, 80 Cal.App.2d 301, 315 [181 P.2d 899], 'no party has a right to refuse to produce any report or document which may have a bearing upon the facts of the pending litigation.'

"Nor can it be said that any of the documents are privileged as petitioner contends. The photographs have simply recorded what any eyewitness could have seen. The statement of facts by the plaintiff was made to the defendant's agent. Certainly, the relationship of client and attorney did not exist between Wynona Bell and the city attorney. They were dealing at arm's length. Although the report of Gnecco, the driver, originated with him, it does not appear to have been directed to any attorney. In fact the record does not disclose that Gnecco had any attorney at the time the report was made up. The report appears to be more of a statement of facts for study in the prevention of accidents than a communication from a client to his attorney. As is stated in Wigmore on Evidence, section 2318, second edition, it is only those documents which the party has created as a communicating client, that are privileged.

"In *Construction Prod. Corp.* v. *Superior Court*, 103 Cal. App.2d 403, 404 [229 P.2d 399], it is said that 'In determining the propriety of an order under section 1000, Code of Civil Procedure, it must be borne in mind that the trial court's action thereunder is discretionary and that all intendments are in favor of the validity of such order. Accordingly, such action will not be annulled unless a clear abuse of that discretion appears. (*Milton Kauffman, Inc.* v. *Superior Court*, 94 Cal.App.2d 8, 16 [210 P.2d 88].)' The order here made does not appear to violate any fundamental right of the petitioner."

There was a clear conflict in the affidavits on the question of the purpose for which the papers were prepared. This is apparent on their face. The affidavits of the claimants of the privilege (the city and Gnecco) stated that the papers were for transmittal to their attorney for use in the pending litigation. On the other hand, plaintiff's affidavits opposing the privilege stated that they were made in the regular course of business of the city in operating its transportation system and are known as "defect cards" and "defect reports," that

is, reports of unusual conditions or defects with respect to the busses. The trial court resolved this conflict against the existence of a factual basis for the privilege and this court should not, as does the majority, reweigh the affidavits and arrive at a contrary conclusion.

It is a settled rule that the one claiming the privilege has the burden of establishing the facts as a basis for its application (*McKnew* v. *Superior Court*, 23 Cal.2d 58 [142 P.2d 1]; *Carroll* v. *Sprague*, 59 Cal. 655; *Sharon* v. *Sharon*, 79 Cal. 633 [22 P. 26, 131]; *Collette* v. *Sarrasin*, 184 Cal. 283 [193 P. 571]). Whether the privilege is properly available, is a *factual* issue to be disposed of according to the principles applicable to such questions. As said in *Hager* v. *Shindler*, 29 Cal. 47, 64: ". . . whether a communication by a client to his attorney was made in confidence, is a question of fact, to be disposed of on principles applicable universally to questions of that character.

"We must assume that the Court below passed upon the point as involving a matter of fact, and found that Mastick's knowledge of the voluntary character of the deed was not confidential; and we consider the finding to be well sustained by the evidence." In *Stewart* v. *Douglass*, 9 Cal.App. 712, 714 [100 P. 711], it is said: "The first assignment of error argued by plaintiff relates to the ruling of the court admitting evidence of certain statements made by him to an attorney at law over the objection that they were privileged. When this objection was made, and before passing upon it, the court took the testimony of witnesses to determine whether or not these statements were made in the course of professional employment. This was the proper procedure. The court found that the statements were not so made. *It being within the province of the trial court to pass upon this, like any other question of fact, and the evidence being conflicting, the conclusion of the trial court will stand as final.*" (Emphasis added.) In *Dwelly* v. *McReynolds*, 6 Cal.2d 128 [56 P.2d 1232], this court said at page 131: "The question of privilege was a matter for the trial court's determination and its decision, upon conflicting evidence, is conclusive." Those principles are in accord with the general rule that where there is a conflict in affidavits on a factual issue before the trial court that court's resolution thereof is binding on an appellate court. (*Voeltz* v. *Bakery etc. Union*, 40 Cal.2d 382 [254 P.2d 553]; *Hale* v. *Bohannon*, 38 Cal.2d 458 [241 P.2d 4]; *Lohman* v. *Lohman*, 29 Cal.2d 144 [173 P.2d 657];

*Gordon* v. *Perkins,* 203 Cal. 183 [263 P. 231] ; *Doak* v. *Bruson,* 152 Cal. 17 [91 P. 1001] ; *Brainard* v. *Brainard,* 82 Cal.App. 2d 478 [186 P.2d 990].)

In the face of these well-established principles the majority holds that while regular course of business was one of the purposes, the dominant or primary purpose was that the papers were prepared and transmitted to the attorney to be used in litigation. In this connection the majority opinion states: ''As to the reports and photographs it is clear that from their character and content they fall within the privilege. Both originated with agents of the city and it is undisputed that they were forwarded in confidence to the defendants' attorneys for use in possible litigation.'' This holding disregards the settled rule that the burden of establishing the right to the privilege rests upon the claimants and it is the function of the trial court to determine what the dominant purpose was. The trial court could have rejected the claimants' conclusionary statements in their affidavits that the papers were for transmittal to the attorneys for the purpose of litigation. In reaching its result the majority states: ''These affidavits were uncontradicted as to the purpose of the documents. In this connection the plaintiff asserts only that they were prepared in the regular course of business. But there is no valid basis for a distinction between a communication created for transmittal to an attorney to prepare for threatened litigation following particular accidents, and a communication prepared for an identical purpose under standing rules in the case of all accidents involving personal or property injury. Because the scope of the operations of the defendant city's Municipal Railway is such as to require communications of this nature as a routine matter, it cannot be said that the attorney-client privilege did not attach.'' The claimant's affidavits were contradicted because it appears from plaintiff's affidavits that Gnecco's statement and the photographs were ·prepared as a defect report in the regular course of business and not for use in litigation, and, therefore, not within the privilege. If it was ''routine'' and usual business to have such papers, the fact that they might be used in connection with litigation would not make them privileged. The majority holding ignores the probability that the papers were for the purpose of more efficiently operating the transportation system—to check on the skill of the drivers and condition of the equipment in order that appropriate steps could be taken to cure any deficiencies. The trial court

could, as it did, choose that purpose as the dominant one believing that the possibility of litigation was merely incidental and which might not even mature into an existing fact. In holding to the contrary the majority again usurps the function of the trial court by determining an issue of fact on conflicting evidence. The majority does this by arbitrarily disregarding the conflicting statements in the affidavits of the respective parties and holding that the trial court abused its discretion in determining what the dominant purpose was for the preparation of Gnecco's report of the, accident and the taking of photographs.. The majority holding in this respect is in line with the current trend of recent decisions of this court to determine the facts contrary to the trial court even though there is a substantial conflict in the evidence.[1] By its holding, *as a matter of law,* that reports, even though made as a routine business matter, are nevertheless privileged if later transmitted to an attorney for threatened litigation, the majority adopts a rule clearly out of line with the great weight of authority elsewhere. It is stated with ample and correct citation of authority ". . . the great weight of authority favors the view that such a statement or report made in the *ordinary course of duty* and before litigation has been commenced or threatened is not a privileged communication." (Emphasis added; 146 A.L.R. 977, 980.)

It has been held repeatedly that section 1000 should be liberally construed in favor of inspection (see *Union Trust Co.* v. *Superior Court,* 11 Cal.2d 449 [81 P.2d 150, 118 A.L.R. 259]; *Austin* v. *Turrentine,* 30 Cal.App.2d 750 [87 P.2d 72, 88 P.2d.178]; *Milton Kauffman, Inc.* v. *Superior Court,* 94

[1]*Leipert* v. *Honold,* 39 Cal.2d 462 [247 P.2d 324, 29 A.L.R.2d 1185]; *Rose* v. *Melody Lane,* 39 Cal.2d 481 [247 P.2d 335]; *Cary* v. *Wentzel,* 39 Cal.2d 491 [247 P.2d 341]; *Hamasaki* v. *Flotho,* 39 Cal.2d 602 [248 P.2d 910]; *Rodabaugh* v. *Tekus,* 39 Cal.2d 290 [246 P.2d 633]; *Hawaiian Pineapple Co.* v. *Industrial Acc. Com.,* 40 Cal.2d ·656 [255 P.2d 431]; *Better Food Mkts.* v. *American Dist. Teleg. Co.,* 40 Cal.2d 179 [253 P.2d 10]; *Atkinson* v. *Pacific Fire Extinguisher Co.,* 40 Cal.2d 192 [253 P.2d 18]; *Sutter Butte Canal Co.* v. *Industrial Acc. Com.,* 40 Cal.2d 139 [251 P.2d 975]; *Mercer-Fraser Co.* v. *Industrial Acc. Com.,* 40 Cal.2d. 102 [251 P.2d 955]; *Gill* v. *Hearst Publishing Co.,* 40 Cal.2d 224 [253 P.2d 441]; *Goodman* v. *Harris,* 40 Cal.2d 254 [253 P.2d 447]; *Pirkle* v. *Oakdale Union etc. School Dist.,* 40 Cal.2d 207 [253 P.2d ´1]; *Burtis* v. *Universal Pictures Co., Inc.,* 40 Cal.2d 823 [256 P.2d 933]; *Kurlan* v. *Columbia Broadcasting System,* 40 Cal.2d 799 [256 P.2d 962]; *Weitzenkorn* v. *Lesser,* 40 Cal.2d 778 [256 P.2d 947]; *Turner* v. *Mellon,* 41 Cal. 2d 45 [257 P.2d 15]; *Barrett* v. *City of Claremont,* 41 Cal.2d 70 [256 P.2d 977]; *Estate of Lingenfelter,* 38 Cal.2d 571 [241 P.2d 990]; *Gray* v. *Brinkerhoff,* 41 Cal.2d 180 [258 P.2d 834].

Cal.App.2d 8 [210 P.2d 88] ; *Parker* v. *Shell Oil Co.*, 55 Cal. App.2d 48 [130 P.2d 158] ; *McClatchy Newspapers* v. *Superior Court,* 26 Cal.2d 386 [159 P.2d 944] ), the same as the statutes relating to depositions, including that of the adverse party and his agents (Code Civ. Proc., § 2055). (*Pollak* v. *Superior Court*, 197 Cal. 389 [240 P. 1006] ; *Moran* v. *Superior Court,* 38 Cal.App.2d 328 [100 P.2d 1096] ; *Zellerbach* v. *Superior Court,* 3 Cal.App.2d 49 [39 P.2d 252].) As stated in *Union Trust Co.* v. *Superior Court, supra,* 11 Cal.2d 449, 462: ". . . the enactment of statutes relative to the remedy of obtaining evidence by inspection was had with a view to provide a more speedy and less expensive remedy than by the proceedings in chancery; that they 'are remedial in their nature and should be liberally construed.'

"That the *trend of judicial decisions* is to *relax* the rules which relate to the taking of evidence by ancillary proceedings, of which the inspection of documents is one method, to the end that the trial of actions may be expedited and justice be more efficaciously and speedily administered, is reflected in many modern decisions, some of which are here noted." (Emphasis added.)

It has been held thereunder (Code Civ. Proc., § 1000) that the papers sought to be inspected must be material and admissible in evidence at the ensuing trial of the action, and they must be properly identified; the applicant for the order of inspection must show those things to justify an order. (*McClatchy Newspapers* v. *Superior Court, supra,* 26 Cal.2d 386; *Milton Kauffman, Inc.* v. *Superior Court, supra,* 94 Cal. App.2d 8; *Kullman, Salz & Co.* v. *Superior Court,* 15 Cal.App. 276 [114 P. 589]. But "Section 1000 is remedial in character and is to be liberally construed. The modern tendency in the administration of justice is to relax the rules which relate to the inspection of writings to the end that the trial of actions may be expedited and justice be more efficaciously and speedily administered. The statute was designed to assist a party to an action to discover material facts even though the writings evidencing such facts are in the possession of the adverse party. It is a wholesome aid to the proper administration of justice. *The obtaining of inspection of writings in a case where it appears that the rights of a party may depend upon its proper exercise, should not be regarded 'as a game' having fixed rules 'that must be literally and punctiliously observed.'* Refusal to comply with

an order of inspection based on technical objections does violence to the spirit and intent of the statute." (*Milton Kauffman, Inc.* v. *Superior Court, supra,* 94 Cal.App.2d 8, 15; emphasis added.) Those elements may be shown by the pleadings in the action as well as affidavits offered by the applicant for the order. (See *Union Trust Co.* v. *Superior Court supra,* 11 Cal.2d 449; *Milton Kauffman, Inc.* v. *Superior Court, supra,* 94 Cal.App.2d 8.)

As above mentioned the complaint in plaintiff's action charged that the negligent operation of the bus by Gnecco, the city's driver, caused her injuries. The city and Gnecco answered denying the material allegations and pleaded contributory negligence on the part of plaintiff. The affidavits show that Gnecco made a written report to city officials of the accident, the basis of the action, as shown by his deposition which was taken; that the photographs of the bus and plaintiff were taken by the city shortly after the accident; that 11 days after the accident an agent of the city questioned plaintiff regarding the events that transpired at the accident; and her statements were written by the agent and she signed this statement; that she does not remember what she said because of her emotional and physical condition at the time the statement was taken. While there are conclusionary statements in the affidavits with reference to the materiality of these papers, their relevancy is sufficiently shown. The report of Gnecco of the accident would necessarily include his version of the facts concerning it, the precise matters in issue in the action. It may well be admissible, if it contains admissions against him, to prove negligence, or even for the same purpose against the city if within the scope of his employment. Also, it may be admissible to impeach his testimony at the trial if there is a variance. Plainly the photographs of the bus and the scene of the accident are relevant and commonly used. (See 10 Cal.Jur. 860, 896; Code Civ. Proc., § 1954.) Plaintiff's statement could be used to refresh her memory or to impeach her if there is a variance between it and her testimony at the trial.

It is urged, however, that under the equity bill of discovery rules, an inspection before trial cannot be had by a party (plaintiff here) to ascertain the documentary evidence which his opponent (petitioners here) has to support his own case. The general rule at common law was that a party was not entitled to ascertain before trial the tenor of his adversary's evidence. (Wigmore on Evidence (3d ed.), § 1845.)

In equity and by a bill of discovery in equity for assistance in the law court, there was an exception authorizing the inspection before trial of documents in the adversary's possession (*ibid.*, §§ 1846, 1857). The limitation on that right of inspection "was that it should include only those documents which contained *the evidence of the applicant,* and not those which contained the adversary's own evidence. If, for example, A sued B to enforce a contract, and the instrument was in B's possession, A could obtain inspection of that instrument, but not of a release which B might also possess. It is true that A might sometimes be unaware of the precise contents or even of the existence of documents evidencing his own case but possessed by B, and to this extent the discovery and inspection would relieve him from the risk of unfair surprise and would thus in spirit be an exception to the general rule and a decided improvement over his situation under common-law procedure. But this would be merely an accidental result in a given case; in theory of law he was inspecting merely that which was in a sense already his own. The strict and invariable rule, already briefly noted (*ante,* § 1846), in harmony with the rule already examined for witnesses (*ante,* § 1856b), was that no inspection in advance could be demanded of those documents which were to serve merely as the adversary's own evidence.

"In short, there was in chancery no exception to the broad principle of the common law that a *party is not entitled to ascertain before trial* the tenor of the documentary evidence which the *adversary possesses to support his own case.*" (*Ibid.,* § 1857.)

To simplify the matter, most states adopted statutes authorizing law courts to order pretrial inspection of documents. (*Ibid.,* § 1859.) This state has had such a statute since its inception (California Practice Act, Stats. 1851, p. 51, § 446). It was placed in the original Code of Civil Procedure as section 1000 (as it is now) and has at all times read substantially the same. Particular provision is made with respect to inspection of accounts (Code Civ. Proc., § 454), written instruments in actions on them (Code Civ. Proc., § 449), notice to produce a writing (Code Civ. Proc., §§ 1938-1939) and using the *subpoena duces tecum* (Code Civ. Proc., § 1985).

With the thought in mind that section 1000 must be liberally construed, I do not think the Legislature intended

to incorporate the aforementioned bill of discovery limitation. There is nothing in the language of the section which indicates such a limitation. Indeed it is to the contrary. It authorizes inspection by *either* party of *any* papers in the adversary's possession or control containing evidence relating to the *"merits"* of the action *or* a *"defense"* therein. In speaking of the penalties suffered if the inspection is refused, the court may exclude the paper from being given in evidence, which could apply *only to papers in support of the adversary's own case.* It then goes on to state the result where the paper of which inspection is refused is wanted by the applicant for his own case, thus further indicating that the inspectable papers are not confined to the applicant's own case. I agree with Professor Wigmore when he states in connection with a summary of the inspection statutes of the various states that "This legislation was plainly animated by a conviction that the existing principles were defective, and that, for the reasons already examined (*ante*, § 1847), a determined inroad should be made on the sportsman's theory that the adversary is entitled to keep his own evidence to himself until the trial." (Wigmore on Evidence (3d ed.), *supra*, § 1859.) It has been held in other states with statutes which do not contain the phrases last above discussed, having only the first sentence like section 1000, that pretrial inspection may be had of papers relevant for use by applicant even though they were the adversary's own documentary evidence. (See *Looney* v. *Saltonstall*, 212 Mass. 69 [98 N.E. 698]; *Fox* v. *Derrickson*, 7 Boyce (Del.Super.) 129 [104 A. 155]; *Lacoss* v. *Town of Lebanon*, 78 N.H. 413 [101 A. 364]; see cases contra collected Wigmore on Evidence (3d ed.), § 1856b.)

In this state, the cases have not indicated that the limitation in the bill of discovery existed under section 1000. Some cases speak of the statutory law as springing from the bill of discovery or as being based on that principle. (*Wright* v. *Superior Court*, 139 Cal. 469 [73 P. 145]; *Union Trust Co.* v. *Superior Court*, *supra*, 11 Cal.2d 449; *Parker* v. *Shell Oil Co.*, 55 Cal.App.2d 48 [130 P.2d 158].) But none of them holds that the limitation here discussed is present. They do speak of the necessity of liberality in allowing inspection. *Union Collection Co.* v. *Superior Court*, 149 Cal. 790 [87 P. 1035], and *Favorite* v. *Superior Court*, 52 Cal. App. 316 [198 P. 1004], merely hold that a person cannot by a bill of discovery obtain evidence on a collateral matter that is not relevant to any of the issues in the case. In

*Reed* v. *Union Copper Min. Co.,* 1 Cal.Unrep. 587, it was merely said that a bill of discovery was not proper because defendant could be required to answer under oath or called as a witness. *Ex parte Clarke,* 126 Cal. 235 [58 P. 546, 77 Am.St.Rep. 176, 46 L.R.A. 835], holds only that books cannot be required to be produced unless shown to be material to some issue. *People* v. *Nields,* 70 Cal.App. 191 [232 P. 985], and *Barrington* v. *Pacific Electric Ry. Co.,* 83 Cal.App. 100 [256 P. 567], dealt with a lack of showing of materiality. It has been said, without discussion of the point here involved, that inspection was proper although the documents bore evidence of the adversary's own case. (*Avery* v. *Wiltsee,* 177 Cal. 484 [171 P. 95], defendant wanted plaintiff's books in action by plaintiff for attorney's fees and money expended by plaintiff for defendant.) In *Demaree* v. *Superior Court, supra,* 10 Cal.2d 99, it was held that by *subpoena duces tecum* on deposition to perpetuate testimony (which of course was before trial), in a pending personal injury action against defendant, an alleged insured, plaintiff, could obtain the production of any insurance policy covering him because it could be material in an action against the insurer, if and when such action was brought, after and if he obtained judgment against defendant. To the same effect is *Superior Ins. Co.* v. *Superior Court,* 37 Cal.2d 749 [235 P.2d 833].

I conclude, therefore, that the materiality of the papers included in the inspection order clearly appears and that they are such that they come under the provisions of section 1000 of the Code of Civil Procedure.

I would therefore deny the writ as to all documents.

The petition of real party in interest for a rehearing was denied April 7, 1954. Carter, J., and Traynor, J., were of the opinion that the petition should be granted. Carter, J., filed the following opinion:

CARTER, J.—The petition for rehearing herein calls attention to the fact that the record does not disclose that the photographs in question were taken by an agent of the city. This is correct. The record does not disclose by whom the photographs were taken. It is alleged in the affidavits that the photographs were in the possession of counsel for the city but there is no showing whatsoever that the photographs

were taken by anyone on behalf of the city or that they were acquired by the city in contemplation of litigation arising out of the accident here involved. Since the burden was on the petitioner here to show that the photographs were privileged, it is clear that he failed to make such showing. The majority opinion is therefore based upon the erroneous assumption that the photographs were taken by an agent of the city.

Since the decision in this case was .filed my attention has been called to several authorities which support the ruling of the trial court here but which were not cited in any of the briefs. These authorities are *Morehouse* v. *Morehouse,* 136 Cal. 332 [68 P. 976], *Freel* v. *Market St. Cable Ry. Co.,* 97 Cal. 40 [31 P. 730], *Hirshfeld* v. *Dana,* 193 Cal. 142 [223 P. 451], *Cordi* v. *Garcia,* 39 Cal.App.2d 189 [102 P.2d 820]. None of these authorities is cited in either the majority or dissenting opinions and were not considered by the court in the decision of this case.

In *McKinley* v. *Southern Pac. Co.,* 80 Cal.App.2d 301, 314 [181 P.2d 899], the court said: "The next contention of appellants Southern Pacific Company and its employees is that the trial court erred in granting respondents' motion to compel said appellants to produce written reports of the accident made by appellants Ahlborn and Shafer (the engineer and fireman) to their superior. Upon cross-examination of said appellants respondents brought out the fact that they had made written reports to B. E. Stone, their superior, and counsel for respondents thereupon demanded said statements and moved the court for an order requiring appellants to produce them, which motion was granted by the court over the objection of said appellants. Appellants concede that no prejudice resulted to them from said ruling but urge that it is a question of some importance and should be determined by this court. . . .

"In *Morehouse* v. *Morehouse,* 136 Cal. 332, 337 [68 P. 976], the court, quoting from *Ex parte Clarke,* 126 Cal. 235, 239 [58 P. 546, 77 Am.St.Rep. 176, 46 L.R.A. 835], said: '[W]hen a witness is in court . . . and discloses that he has a paper, document, or book which would be evidence in favor of the party desiring it, he may, in a proper case, be rightfully ordered to produce it.' See, also, *Freel* v. *Market St. Cable Ry. Co.,* 97 Cal. 40, 44 [31 P. 730]; *Hirshfeld* v. *Dana,* 193 Cal. 142, 153 [223 P. 451]; *Cordi* v. *Garcia,* 39 Cal.App.2d 189, 196 [102 P.2d 820]. And in the latter case

the court, after citing *Morehouse* v. *Morehouse, supra,* said that the right of defendants' attorney to inspect and use letters in question for impeachment purposes might have been properly granted.

"Appellants assert that no showing was made in this case that anything in the requested statements was material to the issues in the instant case, but it is difficult to understand how written reports by the engineer and the fireman to their superior as to the details of the accident could fail to be material. Where the engineer and fireman were witnesses and testified as to such details, and in the course of such testimony stated that they had made such written reports, it was, in our opinion, clearly proper for the trial court to grant respondents' motion to order appellants to produce said statements for respondents' use in further cross-examination. If there were statements in said reports inconsistent with the testimony of the witnesses, respondents were entitled to use them for impeachment purposes, and if there were no inconsistent statements in said reports, no possible injury could result to appellants. A trial court must be depended upon to exercise a wise discretion in such matters to protect a party from any unnecessary disclosure to others of the contents of his private books, papers and records, but no party has a right to refuse to produce any report or document which may have a bearing upon the facts of the pending litigation."

The decision in the McKinley case was rendered June 12th, 1947, and a hearing was denied by this court on August 7th, 1947. I respectfully submit that the majority holding in the case at bar is in direct conflict with all of the above cited authorities.