Michael Catalano, J.
Plaintiff seeks an order to take depositions of General Adjustment Bureau, Inc., Frey and Jones, *1019 American Insurance Association and F. E. Seymour, Inc., and Joseph J. Naples, as “agents and/or employees” of the defendants or some of them; and to see certain documents.
The moving affidavit states that deponent is an attorney for plaintiff; this action is for $176,191.35 for personal property damage by fire; the answers include defenses of fraud, arson, neglect to preserve property and improperly written insurance policies; plaintiff, as a loss payee on the insurance policies, has no knowledge of these defenses; all, except Naples, are agents of all or some of the defendants; Naples was an employee of F. E. Seymour, Inc.; the reports and studies of the origins of the fire are essential and cannot be duplicated because the burned premises have been “ completely refurbished.”
The answering affidavits of three attorneys for defendants state that investigation into the loss began “ immediately after its occurrence,” by B. L. Jones, Bichard W. Bartholomew and Francis Conway; the last-named was “ contacted ” by Baymond Williams, Police Chief of the Town of Hamburg where the fire took place on March 16,1964; that Jones, Bartholomew and Conway “asked for legal assistance” from two of defendants’ attorneys, stating that the fire appeared to be incendiary; that legal advice was given, one attorney going personally to the scene with the three investigators; that before any claim of loss was made, the attorneys recommended to defendants to resist any claim; that the above events preceded the preparation of any reports, memoranda, correspondence, studies or other papers prepared by these investigators for their principals; that thereafter written data were prepared, then submitted to legal counsel to aid in the defendants’ defense; that although payment was made to the mortgagee of the real property, defendants denied liability to the insureds and loss payees for loss to personalty.
Generally there shall be full disclosure of all evidence material and necessary to prosecute or defend an action, regardless of the burden of proof (CPLRR 3101, subd. [a], except privileged matter (ibid., subd. [b]), an attorney’s work product (ibid., subd. [c]), material prepared for litigation (ibid., subd. [d]).
Unless the client waives the privilege, an attorney or his employee who obtains a confidential communication made between the attorney or his employee and the client in the course of professional employment shall not be allowed to disclose such communication, nor shall the client be compelled to do so, in any action. (CPLR 4503, subd. [a]). This privilege, belonging to the client, does not extend to everything .that comes to the attorney’s knowledge while acting as such, and *1020 does not include information derived from other persons or sources. (Matter of King v. Ashley, 179 N. Y. 281, 284.)
Here, the confidential communications by agents of the corporate client, indicating that a fire was incendiary, given to the attorneys for legal advice consisting of a recommendation to resist any claim, are privileged.
Generally, the attorney’s privacy in preparing for trial shall not be invaded, unless some rule or statute permits it and the one who would invade that privacy meets his burden of establishing adequate reasons therefor. (Hickman v. Taylor, 329 U. S. 495, 512, 514.) This protection may extend to any writing prepared by the party’s agent, or any work product of the attorney, to be used in preparation for litigation. (Bloom v. New York City Tr. Auth., 20 A D 2d 687; Rios v. Donovan, 21 A D 2d 409.)
When automobile liability insurance (“ simply litigation insurance ”) directs the insurer to defend the insured, the accident reports are presumed to be made in preparation for defense or settlement of claims; but other insurance, such as fire, may necessitate reports to be made for the regular internal operation of an enterprise such as how to prevent fires in the future; the latter reports would be subject to disclosure, the former would not. (See Kandel v. Tocher, 22 A D 2d 513, 515.)
The question often arises in an action by an insured against its insurer when the former seeks to examine a fire insurance adjuster hired by the insurer to investigate the fire as to whether the adjuster’s report was created in preparation for litigation or as part of the insurer’s normal business routine. (Welch v. Globe Ind. Co., 25 A D 2d 70, 72.) If the report is mere business routine, it may be examined whether or not the insured possesses knowledge thereof (Dialand Elec. Sales Corp. v. Worcester Mut. Fire Ins. Co., 5 A D 2d 1047, 1048); if made to prepare for its defense, the report is generally inviolate (Naiman v. Niagara Falls Ins. Co., 283 App. Div. 1016; see, also, Zdonczik v. Pennsylvania Southern Gas Co., 35 Misc 2d 735, 737, affd. 18 A D 2d 749).
The First Preliminary Report of the Advisory Committee on Practice and Procedure (Feb. 1, 1957) at page 120 states: “ The advisory committee rejected as impractical the possibility of distinguishing between attorneys regularly retained as investigators of accidents by public utilities and insurance companies and those assigned to particular matters after litigation has begun or been threatened. Presumably, even the lawyer hired for routine investigations will shape his inquiry and report *1021 by what he considers to be relevant in view of some legal theory. For similar reasons, reports prepared by a layman primarily for use by attorneys in litigation are exempt. Whether an internal business report of an accident, for example, is designed for use in litigation or for use by management in disciplining employees, avoiding future accidents, or making required governmental reports may be a close question best left to the courts. Cf. Pekelis v. Transcontinental & Western Air, Inc., 187 F. 2d 122 (2d Cir.), cert, denied, 341 U. S. 951 (1951); Holm v. Superior Court, 42 Cal. 2d 500, 267 P. 2d 1025 (1954).”
When a fire loss is investigated by an attorney at law, the court should inquire into the capacity in which he was acting for his client. The right to practice law does not mandate the licensee to act as an attorney every time he acts. An attorney may have many legal clients, or one client for whom he devotes his entire work time; he may have many nonlegal principals, or one principal who is his sole employer. The attorney’s time is his stock in trade, provided he is acting as an attorney in the relationship of attorney-client, not merely agent-principal, employee-employer, servant-master. Thus, each case should be screened carefully of all available facts to determine whether the investigator be attorney in action, or otherwise.
When three investigators, as agents, investigate a fire for 27 insurers, who retain a firm of experienced attorneys in fire-loss cases, and report evidence of apparent incendiarism to two of those attorneys the day after the fire, and one of these attorneys accompanies the investigators to the scene to see for himself, and the following day the senior partner of these attorneys returns after a day’s absence to confer and advise with the investigators and his junior law partners, and all three attorneys recommend and advise the 27 insurers to resist any claims, the investigation and reports thereof to the 27 insurers and that law firm are material prepared for litigation, and so unavailable to the insured or loss payee, “unless the court finds that the material can no longer bo duplicated because of a change in conditions and that withholding it will result in injustice or undue hardship.” (CPLR 3101, subd. [d].)
Here, the investigators’ reports and studies cannot be duplicated because the burned premises have been “ completely refurbished.” Nevertheless, there is no showing that the withholding will result in injustice or undue hardship.
Since the defendant clients object, the privileged matter shall not be obtainable (CPLR 3101, subd. [b]) and the work product of these attorneys shall not be obtainable {ibid., subd. [c]).
*1022 It was stipulated in open court by all parties’ attorneys that plaintiff may examine Joseph J. Naples as to relevant matters occurring before the fire.
Motion denied as to the taking of depositions of the named persons in notice of motion, (1), (2), (3), (4) and (5), except as stipulated to the contrary; motion denied as to the disclosure of items therein (b), (c), but granted as to (a), (d). No costs.